No. 12316

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

HUBERT G. DENNY and PATRICIA A. DENNY,
husband and wife,

Plaintiffs and Appellants,

-vs-

JACK L. BRISSONNEAUD, d/b/a ESTATE REALTY:
TOM ADAMS, d/b/a REAL ESTATE EXCHANGE, and
GLACIER GENERAL ASSURANCE COMPANY,

Defendants and Respondents.

Appeal from: District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellants:

Tipp, Hoven and Brault, Missoula, Montana.
Vernon Hoven argued, Missoula, Montana.

For Respondents:

Garlington, Lohn and Robinson, Missoula, Montana.
Robert E. Sheridan argued, Missoula, Montana.
Boone, Karlberg and Haddon, Missoula, Montana.
Thomas H. Boone argued, Missoula, Montana.
Mulroney, Delaney and Dalby, Missoula, Montana.

Submitted: November 29, 1972

Decided: MAR 12 1973

Filed: MAR 12 1973

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

In an action for damages based on fraudulent misrepresentation involving the sale of a residence, the district court of Missoula County, the Hon. Jack L. Green, district judge, directed a verdict in favor of defendants and judgment was entered thereon. From this judgment and subsequent order denying a new trial, plaintiffs appeal.

Plaintiffs are Hubert G. Denny and Patricia A. Denny, his wife, who sold their residence in Missoula to Jack L. Brissonneaud, d/b/a Estate Realty, one of the defendants. Another defendant is Thomas Adams, d/b/a Real Estate Exchange, who was the real estate broker involved in the transaction. The third defendant is Glacier General Insurance Company, which bonded Adams as a real estate broker.

In late 1970, plaintiffs moved from Missoula to Minneapolis and listed their Missoula residence for sale with defendant Adams who had previously handled their purchase of that residence the year before. The total sale price as listed was $22,500, involving a cash payment of approximately $7,150 and assumption of a mortgage of about $15,350. The residence did not sell immediately so on January 1, 1971, the listing was extended for an additional sixty days.

In the latter part of January, defendant Brissonneaud offered to exchange a promissory note he held for plaintiffs' equity in the residence. This offer was communicated by defendant Adams to plaintiffs in Minneapolis. After first refusing the offer, plaintiffs decided to negotiate and returned to Missoula. Plaintiff Hubert Denny talked to defendant Adams further, and rejected another offer by defendant Brissonneaud. Thereafter on February 19, plaintiff Hubert Denny, defendant Adams, and defendant Brissonneaud had a conference in the latter's office. At this point there is a conflict in the testimony concerning statements and representations made to plaintiff Hubert Denny during this conference.

- 2 -

In any event, a written "Earnest Money Receipt and Agreement to Sell and Purchase" was executed on the same day by plaintiffs as sellers and defendant Brissonneaud as purchaser. This agreement fixed a total purchase price of $22,650 on the residence to be paid: $6,600 by assignment of defendant Brissonneaud's interest in an installment promissory note on which Carl A. Malcolm and his wife were makers, which note was in escrow at the First State Bank in Missoula; $750 cash at closing covering defendant Adams' real estate commission; and assumption of the outstanding mortgage on the residence of approximately $15,300. Subsequently, defendant Adams attended to completion of the various documents involved in the transaction including an assignment of the purchaser's interest in the escrow account and the deed.

Plaintiffs subsequently received two monthly payments on the Malcolm note and escrow, one in March and one in April 1971. Since that time plaintiffs have received no payments whatever.

On August 11, 1971, plaintiffs filed an action for damages based on fraudulent misrepresentations against defendants Brissonneaud, Adams, and Glacier General. The gravamen of their action was that defendant Brissonneaud made false representations to them that the maker of the note, Malcolm, was a prominent Missoula businessman who owned property in Missoula in excess of $250,000, and certain other statements relating to the collectibility and security for the note. Plaintiffs seek to hold defendant Adams liable on the basis that he should have made a more thorough investigation to fully inform plaintiffs what they were getting into, and conducted himself in violation of Montana's Real Estate License Act, specifically sections 66-1937 and 66-1940, R.C.M. 1947.

Issue was joined and the case came on for trial by jury on April 24, 1972, in the district court of Missoula County before Judge Green. At the conclusion of plaintiffs' case-in-chief, Judge Green granted defendants' motions for a directed verdict and dismissal on the basis that no damages had been proven. Judgment

- 3 -

was entered thereon and plaintiffs' motion for a new trial was denied. Plaintiffs now appeal from the judgment and denial of their motion for a new trial.

The issue upon appeal is whether the directed verdict was correct. The underlying issue is whether plaintiffs proved any damages.

Plaintiffs contend they proved damages in these particulars: (1) The loss of the $750 paid defendant Adams for a real estate commission; (2) the loss of their equity in their residence; (3) the loss of their right to seek recourse against defendant Brissonneaud; and (4) the loss of use of the moneys due under monthly installment payments under the note. Plaintiffs contend that they have been deprived of a present right with a possibility of future damages and therefore the question of damages should have been submitted to the jury.

Actual fraud is a question of fact. Section 13-310, R.C.M. 1947. The burden of proof is upon the party alleging it, here the plaintiffs. Reilly v. Maw, 146 Mont. 145, 405 P.2d 440. Proof of damages is an essential element of an action for fraud. Lee v. Stockmen's Nat. Bank, 63 Mont. 262, 207 P. 623. Where, as here, an action for fraud is bottomed on false representations, this Court in Holland Furnace Co. v. Rounds, 139 Mont. 75, 80, 360 P.2d 412, has previously expressed this requirement in this language:

> "Damage, injury, or prejudice from reliance on fraudulent representation is a necessary element of fraud whether fraud is being advanced as a ground for recovery or defense."

Generally speaking, the injury or damage which the plaintiff must prove must be something more than contingent damage which may or may not occur. 37 C.J.S. Fraud § 41(f), p. 294. Plaintiff may recover when he shows that he has sustained some pecuniary damage or injury by reason of having been put in a position worse than he could have occupied if there had been/fraud, but he cannot recover where he does not show that he has sustained such damage or injury. 37 C.J.S. Fraud § 41(a), p. 290. Plaintiffs claim to have been

- 4 -

placed in a worse position by the loss of the equity in their house in exchange for an assignment of a note. But is this not exactly what plaintiffs bargained for? The buy and sell agreement of February 19, 1971, specifically setting forth these terms of exhange was signed by plaintiffs.

Plaintiffs contend the damages are not the balance of the note, the value of the note, nor the insolvency of the makers, but the loss of equity they sustained because of the fraudulent transaction. Plaintiffs, however, do not seek rescission of the contract. Rather, they claim the amount of $5,468, which was essentially plaintiffs' equity in the property at the time of the sale, plus defendant Adams' commission. Plaintiffs, in essence, argue they received nothing of value in exchange for their equity. The fallacy in this argument lies in the erroneous premise upon which it is predicated. There is evidence to the effect that shortly after the contract was consummated no payments where made by the makers of the note. But it does not follow that the assigned escrow account which they acquired at the time of the transaction was valueless. See: Kaufman v. Mellon National Bank and Trust Company, 366 F.2d 326, 330 (3d Cir.1966).

In an action based upon fraud the defrauded party's measure of damages is the difference between the actual value of the property at the date of the sale and the contract price. Healy v. Ginoff, 69 Mont. 116, 123, 220 P. 539. When the parties signed the buy and sell agreement of February 19, 1971, plaintiffs acquired the assignment of the proceeds of an escrow account. This assignment had an ascertainable value equal to the value of the note contained within the escrow account. There is no testimony in the record to indicate that at the time of the transaction the note was worth less than its face value.

Plaintiffs solely relied on their claim to the amount of the equity they transferred in exchange. There is simply no evidence to support their claim that at the time of the transaction they exchanged something for nothing, i.e. their equity and the

sales commission valued at $5,468 for the proceeds of a valueless note. Thus no damages were proven simply because there is no evidence that the proceeds of the note were valueless. Judge Green was correct in stating "that in as much as damages have not been shown in any amount---a possibility of damages perhaps, but no damages". Accordingly, the directed verdict in favor of defendant Brissonneaud was correct.

Directing our attention to plaintiffs' claim against defendant Adams, we note that he is a real estate broker licensed under the laws of the state of Montana. As he was the real estate broker involved in the sale from plaintiffs to defendant Brissonneaud, the basis of this action filed by plaintiffs against Adams and the issue before the Court relating to defendant Adams is covered by provisions of the Real Estate License Act, sections 66-1937 and 66-1940, R.C.M. 1947.

In seeking a basis for recovery plaintiffs rely upon section 66-1940, R.C.M. 1947, which provides in pertinent part:

"(b)   In case any person in a civil action is found guilty of having received any money, or the equivalent thereof, as a fee, commission, compensation, or profit by or in consequence of a violation of any provision of this act, he shall in addition be liable to a penalty of not less than the amount of the sum of money so received and not more than three times the sum so received, as may be determined by the court, which penalty may be recovered in any court of competent jurisdiction by any person aggrieved.

"(c)   Any person sustaining damages by failure of a real estate broker or real estate salesman to comply with the provisions of this act, shall have the right to commence an action in his own name against the real estate broker and his surety, or the real estate salesman and his surety, or both the broker and any salesman employed directly or indirectly by such broker and their respective sureties, for the recovery of any damages sustained as the result of any act specified in section 66-1937 herein or as a result of the failure of the real estate broker or real estate salesman to comply with the provisions of this act. In all cases where suit is brought against the broker or the salesman, and his surety, the court shall, upon entering judgment for the plaintiff, allow as a part of the costs of suit a reasonable amount as attorney's fees."

Whether or not plaintiffs have shown a violation of section 66-1937, R.C.M. 1947, it is still necessary to prove damages flowing

from such violation within the meaning of section 66-1940, R.C.M. 1947. Plaintiffs contend that the only proof of damages that is required is proof that defendant Adams received a real estate commission for his services. Such is not the law. Section 66-1940(c) permits a civil action by any "person sustaining damages" against a real estate broker who fails to comply with the provisions of the act. The mere fact that a commission has been received is not enough in itself to meet the requirements of proof of damages. It not only must be shown that the real estate broker violated some provisions of the act, but that plaintiffs suffered some damages thereby. To hold otherwise would be contrary to the intent of the statute which gives a remedy to one who has suffered some damage by virtue of certain actions of a real estate broker or salesman. Since no damages have been shown as a result of the transaction with Brissonneaud heretofore discussed, likewise no proof of damages has been shown against defendant Adams.

Here, plaintiffs are still the holders or assignees of the escrow account for which they bargained. There is no proof that it was or is valueless. Plaintiffs made no attempt to contact the Malcolms for payment or contact Brissonneaud for information or assistance. In short, they did nothing but sue Brissonneaud and Adams without proof of the noncollectibility or worthlessness of the escrowed note. As yet they have not been damaged as the escrowed note may be fully collectible with interest. For these reasons, the district court properly granted defendants' motion for a directed verdict.

The judgment of the district court is affirmed.

_____
Associate Justice

- 7 -

We Concur:

_____
Chief Justice

_____

_____
Associate Justices.

Mr. Justice John Conway Harrison dissenting:

I dissent.

_____
Associate Justice

- 8 -