540 P.2d 194

Sherman BENDALIN, as Special Administrator of the Estate of Hector M. Garcia and Phillip Weeks, Guardian of the Estate of Hector Garcia, Jr. and Edwin Garcia, Appellants,

v.

The VALLEY NATIONAL BANK OF ARIZONA, a national banking association, J. C. Galipeau, Randall Rambler, Inc., an Arizona Corporation, Maricopa County, a governmental body, James Marlar, R. J. Ellis and Peter Kiewitt, Jr., dba Rawlins, Ellis, Burrus & Kiewitt, a co-partnership, and John Does I through 10, Appellees.

No. I CA–CIV 2452.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 25, 1975.

Rehearing Denied Oct. 22, 1975.
Review Denied Dec. 2, 1975.

Meyer & Vucichevich, by Richard P. Meyer, Steven J. Wells, Phoenix, for appellants.

Snell & Wilmer, by Mark Wilmer, Lawrence C. Wright, Phoenix, for appellee The Valley Nat. Bank.

Udall, Shumway, Blackhurst, Allen, Bentley & Lyons, P. C., by John H. Lyons, Mesa, for appellee Randall Rambler, Inc.

Gust, Rosenfeld, Divelbess & Henderson, by James F. Henderson, Phoenix, for appellees James Marlar, R. J. Ellis & Peter Kiewitt, Jr., dba Rawlins, Ellis, Burrus & Kiewitt.

OPINION

OGG, Presiding Judge.

. The plaintiffs, Sherman Bendalin, Special Administrator of the Estate of Hector M. Garcia, and Phillip Weeks, Guardian of the Estate of Hector Garcia, Jr. and Edwin Garcia, filed an action in the Maricopa County Superior Court to recover damages for the wrongful death of Hector Garcia. The plaintiffs claim they are entitled to damages caused by the defendants' wrongful conduct, which generally can be classified as malicious prosecution, abuse of process, wrongful attachment and intentional infliction of mental anguish. Each defendant filed a motion for summary judgment; the trial court granted the motions and the plaintiffs now appeal.

It is our opinion that the plaintiffs did not have a cause of action and that the trial court was correct in granting all of the defendants' motions for summary judgment.

The facts of this case are tragic and bizarre. The defendant Randall Rambler, Inc. sold a used car to Hector Garcia. The Purchase Money Security Agreement and Contract of Sale arising from this transaction were assigned to the defendant The Valley National Bank of Arizona, without recourse. Thereafter the car developed numerous mechanical problems; Garcia returned the car to Randall Rambler and refused to make further payments on his contract. The car was later sold by the Bank under the provisions of § 44–3150, Arizona Revised Statutes, and a deficiency judgment was rendered against Garcia.

After a series of unsuccessful attempts to collect the unpaid judgment the Bank, through its attorneys, instructed the Maricopa County Sheriff's Department to levy the writ of attachment upon Garcia's mobile home. As Deputies Stone and LaRue arrived to carry out the levy, Hector Garcia stepped up behind Deputy LaRue and shot and killed him. Garcia then engaged Deputy Stone in a gun battle in which both were fatally wounded. This wrongful

death action was then filed, alleging, in essence, that the wrongful acts of the defendants drove Garcia insane, and that while insane he engaged in a gunfight with the deputies, which was tantamount to suicide.

Plaintiffs claim the used car was defective and that Garcia effectively rescinded the purchase contract when he returned the defective car to Randall Rambler, Inc. They allege Garcia therefore owed nothing on his contract and that all attempts to collect were illegal and part of a conspiracy against Garcia. They claim the sale of the car by the Bank violated ARS § 44–3150 in that the sale was not conducted in a "commercially reasonable" manner. Plaintiffs further claim the Bank and the attorneys representing the Bank made a wrongful attachment by performing the acts set forth as follows: They attached the mobile home which had a value greatly in excess of the claim; they maliciously attached exempt property and they filed a defective, false affidavit on attachment. A reading of the record before us does not bear out these allegations. It appears the Bank and its attorneys merely attempted to collect a legal debt and that there was no conspiracy among the defendants to harm Mr. Garcia.

■■ It is a well settled rule in the appellate court review of a judgment sustaining a motion for summary judgment that "the record must be viewed in the light most favorable to the party opposing the motion for summary judgment." *Sarti v. Udall*, 91 Ariz. 24, 369 P.2d 92 (1962). Another well established rule in considering the review of a judgment of this nature is that "[a] summary judgment should not be granted when there is an issue of fact, nor where there is the slightest doubt as to the facts." *Lujan v. MacMurtrie*, 94 Ariz. 273, 383 P.2d 187 (1963).

■ Assuming all the allegations against the defendants are true and viewing the record in the light most favorable to the plaintiffs we find the plaintiffs still have not established a cause of action for the wrongful death of Hector Garcia.

Plaintiffs claim that all of these alleged wrongs by the defendants are sufficient in this fact situation to establish plaintiffs' tort claim for intentional infliction of emotional distress.

The *Restatement* defines this tort in terms of "outrageous conduct causing severe emotional distress" as follows:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. *Restatement (Second) Torts,* Section 46.

Comment D to that section states as follows:

"The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!' "

Comment G to Section 46 of the *Restatement (Second) of Torts* is in point and that comment at page 76 states:

"The conduct, although it would otherwise be extreme and outrageous may be privileged under the circumstances. *The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such in-sistence is certain to cause emotional distress. . . .* (Emphasis added)."

The *Restatement* has been followed by the Arizona Appellate Courts in this field of law. *Savage v. Boies,* 77 Ariz. 355, 272 P.2d 349 (1954); *Cluff v. Farmers Insurance Exchange,* 10 Ariz.App. 560, 460 P.2d 666 (1969).

In *Cluff,* supra, at page 562, 460 P.2d at page 668, the Court stated:

"Even if the defendant's acts are done 'wilfully, intentionally and maliciously' with 'intent to inflict mental suffering and emotional distress,' it becomes the duty of the court, as society's conscience, to determine whether the acts complained of can be considered as extreme and outrageous conduct in order to state a claim for relief. *Restatement (Second), Torts* Section 46, Comment (h) (1965)."

The elements of the tort of infliction of emotional distress, as set forth in *Savage v. Boies,* supra, follow the requirements set forth in Section 46 of the Restatement (Second) of Torts. Comment (j) (1965) to that section reads:

"The distress must be reasonable and justified under the circumstances, *and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress,* unless it results from a peculiar susceptibility to such distress of which the actor has knowledge. (Emphasis added)."

The record in this case does not indicate that the defendants committed any acts which could be classified as "outrageous conduct." Garcia died from gunshot wounds after he had murdered two deputies. How could any reasonable person foresee that the attempt to collect the debt in this case would trigger such an unbelievable chain of events? There is no evidence that any of the defendants had any knowledge that Garcia had a peculiar susceptibility to distress.

In our opinion the trial court was correct in ruling as a matter of law that the

578

plaintiffs had no cause of action, for it is clear that Garcia's alleged insanity and suicide were unreasonable reactions to the defendants' acts and hence were unforeseeable.

Affirmed.

DONOFRIO and FROEB, JJ., concurring.