No. 14253

IN THE SUPREME COURT OF THE STATE MONTANA

1978

---

ROBERT C. VAN ETTINGER and
RUTH E. VAN ETTINGER, husband
and wife,

        Plaintiff and Appellant,

   -vs-

ROBERT F. PAPPIN et al.,

        Defendants and Respondents.

---

Appeal from:  District Court of the Eighth Judicial District,
              Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Appellant:

        Richter and Lerner, Billings, Montana
        Alan J. Lerner argued, Billings, Montana
        Hartelius and Lewin, Great Falls, Montana

    For Respondents:

        Swanberg, Koby, Swanberg & Matteucci, Great Falls, Montana
        John Alke argued, Great Falls, Montana

---

                        Submitted: November 22, 1978

                         Decided: DEC 1 1978

Filed:

*Thomas J. Kearney* Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by the plaintiffs from summary judgment entered in behalf of the defendants by the District Court of the Eighth Judicial District, County of Cascade, the Honorable Joel G. Roth sitting without a jury.

On December 3, 1975, the Van Ettingers, appellants, filed this action for damages arising out of a contract for the sale of real estate under which they purportedly purchased an easement for the use of a swimming pool. The complaint alleged breach of contract, fraud, negligence and violation of the Real Estate License Act by defendant-respondents. Respondents are the Pappins, prior owners of the house; Tom Mather, James Durkin and Tom Mather & Associates, the realtors involved in the sale; and Western Surety Company, the realty bonding company.

Depositions were taken and interrogatories were exchanged. On June 30, 1977, respondents filed a motion for summary judgment on all of appellants' claims for relief. On September 26, 1977, appellants filed a cross-motion for partial summary judgment on the issues of liability on all claims and on the issue of statutory damages and entitlement to attorney fees under the Real Estate License Act.

Following oral argument on November 7, 1977, on the mutual motions for summary judgment, the District Court entered findings of fact, conclusions of law, and an order granting respondents' motion for summary judgment and denying appellants' cross-motion for summary judgment.

On appeal appellants do not contest the District Court's ruling that a claim of negligence under the circumstances states no case upon which relief can be granted. They do

contest the dismissal of the counts alleging breach of contract, fraud, and violation of the Real Estate License Act.

This case involves the use of a swimming pool which straddles two lots, numbered 29 and 30, in a Great Falls, Montana, subdivision. Two additional lots, numbered 13 and 14, are involved in the controversy. The lots abut one another as diagrammed:



In 1961 defendant Robert Pappin owned lots 14 and 29 and defendant Tom Mather owned lots 13 and 30. At that time they agreed to jointly develop lots 29 and 30. As part of this development, they built a swimming pool straddling lots 29 and 30. Mather subsequently sold lot 30 to the Penningtons, who along with the Pappins, still the owners of lot 29, executed and recorded in September, 1961, an easement for the use of the swimming pool in favor of each other. This easement does not mention either lot 13 or 14.

In October, 1961, another easement agreement was drawn, purportedly between the owners of all four lots, whereby the owners of lots 29 and 30 granted a permanent easement for the use of the pool to the owners of lots 13 and 14. Under this agreement the costs necessary to use of the pool were to be borne equally by the parties. This easement was not recorded nor was the name or signature of the owner of lot

29 provided. It appears that at the time of the execution of this instrument Pappins still owned both lots 14 and 29; the Mathers signed as owners of lot 13; and the Penningtons signed as owners of lot 30. At the time of the incidents complained of in this case, lot 29 was owned by the Nobles, lot 30 by the Howrys, and lot 13 by the Mathers until January 1, 1974, and the Huffords thereafter.

Although the ownership of the various lots changed over time, the unrecorded easement agreement was honored by all subsequent owners. In August, 1973, however, the Pappins sent a letter to the "Members of the Swimming Pool Association" stating that as a result of their move to a downtown apartment they were "resigning from the swimming pool" and seeking instructions as to whether the remaining members "wish[ed] the new owners to participate in the swimming pool or if [they] would prefer to retain it among the three present members." Thereafter the Pappins did not contribute to the upkeep of the pool.

In September, 1973, the Pappin home located on lot 14 was listed for sale with Tom Mather's real estate agency. Pappin, as a real estate salesman in this agency, received a $386.50 listing commission. Without the knowledge of Pappin, however, Tom Mather indicated on the multiple listing employment contract that included in the sale of the house was a "perpetual easement for pool use via 1/4 expenses sharing". The multi-listing agreement and newspaper advertisements for this property prepared from the multiple listing employment contract both mentioned the easement for the use of the pool.

In May, 1974, Robert Van Ettinger, intending to move with his family from California to Great Falls, signed a

buy-sell agreement with the Pappins. This agreement con-
tained three references to the swimming pool:

> "The following personal property is also to be
> left upon the premises as a part of the property
> purchased. . . and easement for pool use . . .
>
> ". . .
>
> "*It is understood by the buyer that the pool
> is owned by Lots 29 and 30, Block 7, Country
> Club Addition and that Lot 14 has had the right
> of easement for use by contributing one-fourth
> (1/4) of the cost of maintanance (sic), opera-
> tion and taxes.
>
> ". . .
>
> "The use of the pool requires the buyer to pay
> 1/4 of the cost of the operation of the pool."

In early July, 1974, after talking to the owners of
lots 29 and 30, Van Ettinger became concerned that he and
his family would not be allowed to use the swimming pool.
He was assured by the real estate agency that they would be
allowed to use the pool.

On July 20, prior to final closing of the sale, appel-
lants moved into the house on lot 14. On the same day the
access gate between lot 14 and the pool was removed by the
owners of lots 29 and 30. On July 21 Van Ettinger tried to
use the pool and was prohibited from doing so by Howry, who
threatened to have him arrested for trespass. On July 22
Van Ettinger hand delivered a letter to Tom Mather demanding
he rectify the pool situation created by the Nobles' and
Howrys' refusal to let them use the pool. Mather talked to
the Nobles and Howrys and tried to convince them to allow
appellants the use of the swimming pool. They refused, and
Mather then talked to appellants on July 26, advising them
that the Nobles and Howrys would not acquiesce to their use
of the pool. To placate appellants Mather offered at that
time to buy them a country club membership which would allow
them use of the country club's pool.

In spite of these events appellants closed their loan application with the lending institution on July 28, 1974, and closed the sale transaction on July 30. After closing the transaction, appellants filed the instant action.

The following issues are presented to this Court for review:

1. Whether the District Court erred in granting respondents' motion for summary judgment on appellants' count alleging breach of contract?

2. Whether the District Court erred in granting respondents' motion for summary judgment on appellants' count alleging fraud?

3. Whether the District Court erred in denying appellants' motion for partial summary judgment on their count alleging violation of the Real Estate License Act of 1963 and in granting respondents' motion for summary judgment on appellants' count alleging violation of the Real Estate License Act of 1963?

It is most productive to begin analyzing this problem from the last events backwards and determine the effect on the various causes of action of appellants proceeding to closing the sales transaction. This effect is seen most clearly on the contract theory in appellants' complaint. Despite the assertion by appellants that they closed the transaction on July 20, the record itself indicates the transaction did not close until between July 28 and 30. In his deposition Mr. Van Ettinger himself states it was between the 28th and 30th of July when he signed the papers at the bank. The warranty deed from Pappins to appellants, a document of public record, was not executed until July 29 and was not delivered to appellants until July 30. In

addition appellants remained in possession of the house at least until April 29, 1976, when their depositions were taken.

In view of this record appellants' simple assertion that the transaction closed on July 20 will not serve to create an issue of fact merely to avoid summary judgment. Brown v. Thornton (1967), 150 Mont. 150, 155, 432 P.2d 386, 389.

The determination that the transaction closed between July 28 and 30 means the events taking place until then must be considered in determining the effect of appellants' decision to close the sale. Between July 20 and 28, appellants witnessed the removal of the access gate to the swimming pool on July 20, the date they moved into the house on lot 14; Mr. Van Ettinger was threatened with arrest for trespassing when he attempted to use the pool on July 21; and defendant Tom Mather, after talking to the owners of lots 29 and 30, informed appellants on July 26 that these parties refused to allow them use of the pool.

Despite these graphic indications from the other parties that there might be defects in the purported easement and the apparent acquiescence by one of the realtors involved in the matter, appellants proceeded through final closing stages of the sales transaction and remained in possession of the house.

Clause 3 of the sales contract being sued upon states:

"If the seller does not approve the sale within two days hereafter, or if seller's title is not merchantable or insurable and cannot be made so within a reasonable time after written notice containing statement of defects is delivered to seller, then said earnest money herein receipted for shall be returned to the purchaser on demand and all rights of purchaser terminated unless purchaser waives said defects and elects to purchase." (Emphasis added.)

-7-

The deed given by the Pappins to appellants conveyed all of the Pappins' rights, title, and interest in lot 14 as well as all easements attached thereto. Sections 67-1522, 67-1523, 67-1607, R.C.M. 1947. Appellants chose to waive any defects in Pappins' title when they agreed to close the transaction. This waiver was made with the knowledge of a possible dispute over the easement and effectively precludes any remedy based on a contract theory.

Appellants' decision to close the sale also served in part to waive any claim for relief based on fraud. In this case Mr. Van Ettinger's desposition shows he had conducted independent investigations which revealed unequivocally that the Nobles and Howrys, as owners of lots 29 and 30, would refuse appellants access to the pool. In fact he was so advised for the first time even before he signed the buy-sell agreement. Throughout this period of time he asserts he was fraudulently reassured by defendant realtors that everything would be all right with the easement.

True as this may be, on July 26 Tom Mather flatly told appellants they would not be allowed to use the pool by the other owners and offered to pay for a membership in the country club as an alternative. Clearly, any claim that the reassurance continued past this date is unfounded. Yet appellants proceeded to close the transaction.

Appellants must have the ability to make a prima facie showing of nine elements for their fraud claim to survive. These elements are identified in Bails v. Gar (1976), 171 Mont. 343, 558 P.2d 458, 461, 33 St.Rep. 1256, 1259; Cowan v. Westlund Realty (1973), 162 Mont. 379, 383, 512 P.2d 714, 716; and Clough v. Jackson (1971), 156 Mont. 272, 279-80, 479 P.2d 266, 270:

1. A representation;

2. Falsity of the representation;

3. Materiality of the representation;

4. Speaker's knowledge of the falsity of the representation or ignorance of its truth;

5. Speaker's intent it should be relied upon;

6. The hearer's ignorance of the falsity of the representation;

7. The hearer's reliance on the representation;

8. The hearer's right to rely on the representation; and

9. Consequent and proximate injury caused by the reliance on the representation.

Even the excerpts taken from appellants' version of what happened show, that at the very least, they cannot make a prima facie showing of elements six through eight.

In the first place appellants cannot show their ignorance of the falsity of respondents' alleged representations. From the very beginning, they knew the opposite—that the Nobles and Howrys would refuse to let them use the swimming pool. According to Mr. Van Ettinger, this knowledge was obtained before he signed the buy-sell agreement. Appellants knew at all times the Nobles' and Howrys' statements were in direct opposition to those alleged to have been made by respondents, and they knew it was the actions of the other owners which would dictate their ability to use the pool, not the actions of the real estate people.

Additionally, appellants cannot show reliance, the seventh element. They elected to purchase lot 14 despite three warnings from the Nobles and Howrys that they would not be able to use the pool, despite the events of July 20

(removal of the access gate), July 21 (arrest threat for trespass) and July 26 (Mather's notification that the Nobles and Howrys would not allow appellants to use the pool and his offer of a country club membership an an alternative). Assuming fraud until July 20, appellants' actions after that date make any claim of reliance unsupportable.

Appellants could not rely on the alleged representations of respondents as a matter of law. In Lee v. Stockmans National Bank (1922), 63 Mont. 262, 284, 207 P. 623, 630, it was stated:

> "When it appears that a party, who claims to have been deceived to his prejudice, has _inves-tigated_ _for_ _himself_, or that the means _were_ _at_ _hand to ascertain the truth_ . . . of any representations made to him, his reliance upon such representations made to him, _however_ _false_ _they_ _may_ _have_ _been_, affords no ground of complaint, (Grinrod v. Anglo-American Bond Co. 34 Mont. 169, 85 P. 891; Power & Brothers v. Turner, 37 Mont. 521, 97 P. 950; 26 C.J. 1149.)" (Emphasis added.)

Appellants made an independent investigation into the pool situation, and they are barred from now claiming the purchase was made in reliance on respondents' misrepresentations. Lowe v. Root (1975), 166 Mont. 150, 156, 531 P.2d 674, 678.

An alternative ground for this holding is the general rule as stated in 37 Am.Jur.2d _Fraud_ _and_ _Deceit_ §394 at 534-35:

> "As a general rule, where a contract is wholly executory, neither party having performed any part of it, if one party ascertains that the other has been guilty of fraud in the procuring or making of a contract or with reference to the subject matter thereof, he may repudiate the contract, since it is in no way binding upon him, and in such circumstances the defrauded party may not remain silent as to the fraud and perform the contract and then claim damages for the fraud. _It_ _is_ _very_ _gen-erally_ _held_ _that_ _one_ _who_ _discovers_ _that_ _fraud_ _has_ _been_ _practiced_ _upon_ _him_ _while_ _the_ _trans-action_ _remains_ _wholly_ _executory_, _but_ _neverthe-_

less either executes or performs it on his
part or requires performance on the part of
the other party, thereby waives the fraud and
cannot subsequently maintain an action for
damages therefor." (Emphasis added.)

Until appellants decided to close the sale on July 30,
performance under the contract was executory for both parties. However, by July 26 appellants knew in no uncertain
terms that the Nobles and Howrys would not allow them to use
the pool. Additionally, Tom Mather had advised them that
the Nobles and Howrys would not let them use the pool and
offered them a country club membership. Yet appellants
decided to close the sale on July 30. Until that point
performance under the contract was executory for both parties with the exception of the earnest money paid to make
the buy-sell agreement enforceable. On the date of July 30
appellants fully performed their obligation of payment of
the purchase price and demanded performance from respondents
Pappin, who in turn performed their obligation of conveyance.
Appellants' decision to go through with the purchase constitutes a waiver of the alleged fraud and bars them from
now posing that fraud as a claim for relief.

Appellants' reliance on State ex rel. Dimler v. District
Court (1976), 170 Mont. 77, 550 P.2d 914, is misplaced. In
that case the defects in the purchased property were not
discovered until the day following the purchase. 170 Mont.
at 79, 550 P.2d at 918. In the instant action appellants
received numerous, consistent, and graphic indications that
there were problems with the use of the pool culminating
with the apparent acceptance of the realtor selling them the
house in the view that they would not be able to use the
pool after all. All of these indications were given before
closing the sale.

One futher point concerning appellants' contract and fraud theories needs to be made. Appellants have not actually litigated the existence of this easement against the other owners who are forbidding their use of the pool. Neither are these parties joined in this action. As it stands now, the current action is not the proper case to decide whether in fact an easement does exist for the simple reason that the owners of the purported servient estates (lots 29 and 30) as indispensable parties are not represented in this action and cannot have a binding judgment rendered against their possible interests or claims. Rule 19, M.R.Civ.P. Therefore, appellants have put the cart before the horse: They are suing under their contract and fraud theories for respondents' attempt to convey a non-existent easement which has never been shown not to exist.

The final issue presented by appellants has to do with the violation of the Real Estate License Act, section 66-1924, et seq., R.C.M. 1947, by the various real estate agents involved in this sale.

At the time of these incidents section 66-1937, R.C.M. 1947, provided that a broker or agent may have his license suspended or revoked for:

> "(9) Offering real property for sale or lease without the knowledge and consent of the owner or his authorized agent or on any terms other than those authorized by the owner or his authorized agent." (Emphasis added.)

Subsection (b) and (c) of section 66-1940 creates civil penalties for violation of this Act. Under the statute these penalties may be recovered only "by any person aggrieved", subsection (b), or "[a]ny person sustaining damages", subsection (c), and see Denny v. Brissoneaud (1973), 161 Mont.

468, 474-75, 506 P.2d 77, 80. Clearly, appellants can qualify under neither subsection. In the first place, as discussed above, they have failed to establish the nonexistence of the easement and, therefore, cannot be considered aggrieved. Secondly, and more importantly, by closing the transaction they have waived any claim for damages. Therefore, even if, in fact, there was found to exist a technical violation of the Real Estate License Act, the same arguments that supported the District Court on the fraud and contract issues would apply equally well and support the court on this issue.

We agree that the Real Estate Licence Act should be construed to lend maximum efficacy to the enforcement of the fiduciary relationships involved in this profession. Carnell v. Watson (1978), _____ Mont. _____, 578 P.2d 308, 312, 35 St.Rep. 550, 555. This enforcement should not be taken lightly. Yet, the heavy penalties allowed to be added to common law damages would certainly envision that willful misconduct be present as opposed to a natural or what may be characterized as an "honest" mistake, regardless of the argument that another course of conduct or the lack of some negligence would have avoided the situation complained about.

In this case, Tom Mather, the realtor apparently responsible for including the easement in the various listings, had himself been a long-time member of the "swimming pool association", serving as treasurer for the organization for many years. When his neighbor, associate and friend Robert Pappin's house came up for sale, he naturally hoped to emphasize what he considered its strongest selling points, which, to his personal knowledge, included a swimming pool

easement. There is no evidence to suggest that Mather prepared the listing with the intention to misrepresent the house.

The trial court concluded that none of the real estate persons were proved to be culpable of such a willful misrepresentation or should be held to answer further under the Real Estate License Act. The record viewed in its entirety supports this conclusion by the District Court.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-14-