605 P.2d 37

**LaRue DAVIS and LaRue Davis as personal representative of Ancil Davis, Appellants,**

v.

**FIRST NATIONAL BANK OF ARIZONA, and Occidental Life Insurance Company of California, Appellees.**

**No. 1 CA–CIV 4043.**

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 18, 1979.

Rehearing Denied Dec. 6, 1979.

Review Denied Jan. 3, 1980.

Calvin C. Thur, Scottsdale, for appellants.

Streich, Lang, Weeks, Cardon & French by Louis A. Stahl and Deana S. Peck, Phoenix, for appellee First Nat. Bank of Arizona.

Evans, Kitchel & Jenckes, P. C., by Newman R. Porter, Phoenix, for appellee Occidental Life Ins. Co. of California.

OGG, Chief Judge, Division 1.

The appellants, Ancil and LaRue Davis, filed this action against appellees, First National Bank of Arizona and Occidental Life Insurance Company of California, in December 1974. The Davises alleged four claims for relief in their complaint. The first claim for relief against the defendants was for intentional infliction of emotional distress resulting from defendants' attempts to rescind a loan contract on the Davises' travel trailer, subsequent delays in processing and payment of disability benefits, late charges by First National Bank, and attempts to restrict coverage of disability insurance.

The Davises also alleged a claim for fraud based on the defendants' representation that credit life and disability insurance would be provided for six years when it was actually limited to a five-year term.

The Davises' third claim for relief alleged that the defendants breached the agreement to provide disability insurance for six years.

Finally, the Davises alleged a claim, solely against First National for invasion of privacy by requesting and obtaining confidential medical records and medical information about Ancil Davis without his consent.

First National filed an answer and Occidental filed a motion to dismiss for failure to state a claim upon which relief could be granted. The motion was denied and Occidental filed its answer. Following discovery, which included the depositions of Mr. and Mrs. Davis, First National Bank

filed a motion for summary judgment. Occidental filed a motion to dismiss or in the alternative, a motion for summary judgment. In its answer, Occidental admitted that the Davises were entitled to credit life and disability insurance for the entire term of the loan in question. Consequently, the original form of the judgment submitted by the defendants provided that pursuant to agreement by counsel for Occidental, the insurance policy would cover Ancil Davis for the sixth year providing terms and conditions of the policy were satisfied. Plaintiffs objected and the court struck the order providing for the sixth year of coverage. On June 9, 1977, the court entered judgment granting the motion for summary judgment and denying Occidental's alternate motion to dismiss. The plaintiffs now appeal.

It is our opinion that the plaintiffs did not have a cause of action, and that the trial court was correct in granting the defendants' motion for summary judgment.

The Davises originally financed their travel trailer through the United California Bank and obtained credit disability insurance for the entire term of the loan. They moved to Globe, Arizona in March of 1973. On December 28, 1973 the Davises met with Frank Clarine and Max Fowler, employees of First National, and signed the necessary papers for refinancing the trailer through First National. The Davises also executed an installment note and applied for credit life and disability insurance for the term of the loan.

Five days later, Ancil Davis suffered a heart attack which required hospitalization for approximately four weeks. Mr. Clarine learned of Mr. Davis' heart attack on the following day, Wednesday, January 3, 1974, and called Mrs. Davis to suggest that she and her husband cancel the loan contract with First National and file a disability claim with the insurer of the loan financed through the United California Bank. First National had not yet paid off the original financing. Mr. Davis said she would have to think about the suggestion. After thinking about it for a half hour, Mrs. Davis called First National and indicated that she would not cancel the loan.

First National contacted Mrs. Davis for several days thereafter to suggest that she reconsider cancellation of the loan. During this time, Ancil Davis was in critical condition. However, Mrs. Davis testified in her deposition that neither Mr. Clarine nor Mr. Fowler was in any way disrespectful or abusive.

At the December 28, 1973 meeting, Mr. and Mrs. Davis were advised that the credit life and disability insurance they had purchased covered the six year term of the loan through First National Bank. The installment note executed by the Davises on December 28 indicates that the insurance premium of $332.10 was computed on the basis of six years. However, the Occidental group policy which insured the Davises' loan limited disability coverage to five years. Mrs. Davis stated in her deposition that Mr. Fowler informed her of the five year limitation "on or about January 7th." First National also sent the Davises a check for $26.65 as a refund for the sixth year of coverage. Mrs. Davis returned the refund check to First National by letter on January 10, 1974 and indicated in her letter that "we shall honor the contract as written."

There were no further attempts by First National to obtain cancellation of the loan and Mrs. Davis sent the Occidental claim to her physician for completion of the physician's statement. However, Mr. Fowler informed the Davises by letter dated April 25, 1974 that Occidental had not received the Davises' claim form. More specifically the letter stated:

"In spot checking the progress of your disability claim, I find that home office has not received your claim to date. If you could provide me with your doctor's name, I could contact him, for perhaps he is still holding your claim application.

Your cooperation in this matter would be appreciated."

While Mrs. Davis admitted in her deposition that she received the letter, she also stated that she did not "recall the exact action that [she] took."

On May 13, 1974, Mr. Fowler sent the following letter to the Davises:

"Please find enclosed your A & H Claim. It has been filled out and signed by Dr. Myers.

Last week I was in contact with Dr. Myers' office and I spoke to his secretary. She remembers receiving the A & H claim, however, it must have been misplaced. I mailed her a new claim and she returned it in to me this A.M. Please fill out the front portion of this claim, sign it and return to me.

An envelope is provided for your convenience. Once again sorry for the inconvenience."

On May 20, 1974, Mrs. Davis returned the second claim form by letter to Mr. Fowler. Mrs. Davis indicated in her letter that the forms were confidential and should be sent to the insurance company and not to the bank. First National began receiving payment from Occidental in June of 1974.

Prior to receiving the letter of April 25, 1974 from Mr. Fowler, the Davises assumed that their claim had been properly filed with Occidental. However, they received a computer notice in February which indicated that their payments were past due. Several additional notices were mailed to the Davises, including one dated May 16, 1974 which requested payment of $354.30 for all installments due.

Mrs. Davis returned the first notice and stated "no further attention will be given any further notices that arrive." She also returned a computer notice for March and complained about the fact that they were continuing to receive the notices. On June 24, 1974, First National informed the Davises that the bank had received full payment on the Davises' disability claim.

On September 28, 1974, Mrs. Davis wrote to First National Bank and requested that the entire loan be paid off. A bank officer responded by letter on October 7, 1974 and indicated that there were various reasons why the loan could not be paid off in full. The letter noted that Mr. Davis might recover. Alternately, if Mr. Davis died, the credit life policy would pay off the remaining portion of the loan. The letter also noted that the disability policy had a maximum coverage of five years, which would leave one year of payments uncovered.

## I.

The first issue on appeal is whether the trial court properly granted summary judgment on appellants' claim for intentional infliction of emotional distress. Arizona recognizes the test as set forth in the *Restatement (Second) of Torts* § 46 (1965). *Bendalin v. Valley National Bank*, 24 Ariz. App. 575, 577, 540 P.2d 194, 196 (1975); *Cluff v. Farmers Insurance Exchange*, 10 Ariz.App. 560, 460 P.2d 666 (1969). *See Hixon v. State Compensation Fund*, 115 Ariz. 392, 565 P.2d 898 (App.1977). The *Restatement* § 46 states:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

However, the claim is generally held not to arise out of conduct which merely hurts one's feelings. *Cluff v. Farmers Insurance Exchange*, 10 Ariz.App. at 562, 460 P.2d 666. The *Restatement* § 46, comment d, states:

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough

language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, 47 Harvard Law Review 1033, 1053 (1936)"

It is the duty of the court in the first instance to determine "whether the acts complained of can be considered as extreme and outrageous conduct in order to state a claim for relief." *Cluff v. Farmers Insurance Exchange*, 10 Ariz.App. at 562, 460 P.2d at 668 (citing *Restatement (Second) of Torts* § 46, comment h). *Accord, Hixon v. State Compensation Fund*, 115 Ariz. at 394, 565 P.2d 898; *Bendalin v. Valley National Bank*, 24 Ariz.App. at 577, 540 P.2d 194. A review of the pertinent case law indicates that while the conduct complained of by the Davises may have been annoying, it was not extreme or outrageous, and the trial court properly granted summary judgment on the claim for intentional infliction of emotional distress.

## II.

The second issue on appeal involves the plaintiffs' allegation of an invasion of privacy when the bank solicited and obtained medical information from the insured's doctor. A similar allegation was raised in Count II of the plaintiff's complaint in *Cluff*. The plaintiff alleged that the defendant's acts constituted "an 'invasion' of her privacy giving rise to a claim for damages from the resulting emotional distress." 10 Ariz.App. at 563, 460 P.2d at 669. The court stated:

"Professor Prosser has classified the tort of invasion of the right of privacy into four separate causes of action which he categorizes as follows:

'1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

2. Public disclosure of embarrassing private facts about the plaintiff.

3. Publicity which places the plaintiff in a false light in the public eye.

4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.' Prosser, Privacy, 48 Calif.L. Rev. 383, 389 (1960).

[8] While Arizona recognizes the existence of the tort as it appears in Professor Prosser's 4th category, *Reed v. Real Detective Pub. Co.*, supra, [63 Ariz. 294, 162 P.2d 133] and possibly as it exists in categories 2 and 3, cf. *Pegler v. Sullivan*, 6 Ariz.App. 338, 432 P.2d 593 (1967), *Arizona has not passed upon the recognition of the tort in the first category, at least not as a tort for invasion of privacy." Id.* at 563, 460 P.2d at 669 (emphasis added). The court compared Professor Prosser's first category with the tort of intentional infliction of emotional distress and noted the "striking similarity" between the two torts. The court then stated:

"In comparing the two types of torts under discussion here, Professor Prosser makes this comment:

'One cannot fail to be aware, in reading privacy cases, of the extent to which defenses, limitations and safeguards established for the protection of the defendant in other tort fields have been jettisoned, disregarded, or ignored. Taking intrusion first, the gist of the wrong is clearly the intentional infliction of mental distress, which is now in itself a recognized basis of tort liability. *Where such mental disturbance stands on its own feet, the courts have insisted upon extreme outrage, rejecting all liability for trivialities, and upon genuine and serious mental harm, attested by physical illness, or by the circumstances of the case.* But once "privacy" gets into the picture, and the fact of intrusion is added, such guarantees apparently are no longer required.' 48 Cal.L.Rev., supra, at 422.

We are of the opinion that *the safeguards afforded under the tort of intentional infliction of mental distress* as enumerat-

ed in *Savage v. Boies,* supra, *should be retained.*

"For the foregoing reasons, Count II of plaintiff's complaint did not state a claim for relief and the trial court properly granted defendant's motion to dismiss this count."

*Id.* at 564, 460 P.2d at 670 (emphasis added).

■ Therefore, the appellants' invasion of privacy claim can succeed only if there is evidence of all of the elements inherent in a claim for intentional infliction of emotional distress.

■ The appellants admit that if First National Bank was acting as the agent for Occidental Life Insurance Company, there was no invasion of privacy. However, even if First National Bank is correct in arguing that there was no agency relationship, the appellants have still failed to establish all of the elements of a claim for intentional infliction of emotional distress. More specifically, the appellants failed to establish that First National Bank's conduct, in obtaining completion of the physician's statement of a claim, was extreme and outrageous conduct. In other words, the bank's actions were not "so outrageous in character, and so extreme in degree, as to go beyond *all possible bounds* of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Restatement (Second) of Torts,* § 46, comment d. (emphasis added). Consequently, it is unnecessary to consider the other two elements of the tort of intentional infliction of emotional distress which are also prerequisites for recovery.

### III.

■ The next issue raised on appeal is appellants' contention that the conduct of First National Bank and Occidental amounts to a breach of an insurance company's implied duty of good faith and fair dealing. Appellants rely on a series of California cases for the proposition that such a breach allows recovery for emotional distress without requiring a showing of extreme and outrageous conduct. *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973); *Crisci v.*

*Security Insurance Co.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967); *Fletcher v. Western National Life Insurance Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970); *Wetherbee v. United Insurance Co.,* 265 Cal. App.2d 921, 71 Cal.Rptr. 764 (1968) (subsequent appeal reported at 18 Cal.App.3d 266, 95 Cal.Rptr. 678 (1971). This court recently determined that such a cause of action is recognized in Arizona. *Noble v. National American Life Insurance Company,* 1 CA–CIV 4006 (App., filed June 28, 1979) (on review by Arizona Supreme Court). However, the appellants' claim fails as a matter of law because they have not sustained a "loss of property."

In *Noble* the court stated:

"There are essentially three legal positions in a case of this nature. The traditional view has been that an insurance contract is merely one to pay money, and that the only damages available for its breach are the sum which should have been paid plus legal interest. *See Note,* 45 *Fordham Law Review* 164 (1976). The second view would permit a recovery of all foreseeable and consequential pecuniary damages. *Lawton v. Great Southwest First Insurance Company,* [N.H., 392 A.2d 576 (1978)]. The third view would also permit a recovery in tort for mental suffering in a case where the insurer, clearly without justification, breaches its duty to deal with its insured fairly and in good faith.

If courts align with the traditional view, insurers are given powerful incentives to contest and delay the settlement of good faith claims. *See Note,* 48 *Notre Dame Lawyer* 1303 (1973). While we are impressed with that portion of the holding in *Lawton* which would provide for recovery of full consequential damages for breach of contract, we are not persuaded by its holding that the cause of action may not sound in tort and may not allow recovery of damages for mental suffering. In our view insurance contracts are as highly involved with the public interest as are contracts with carriers and public utilities. *Crisci* and other

authorities cited above indicate that an action in tort will lie, and we hereby adopt their view."

*Id.* at 5–6.

A "loss of property" is an essential element for recovery in the California cases dealing with a breach of an implied duty of good faith and fair dealing by an insurance company. The court in *Gruenberg v. Aetna Insurance Co.* stated:

"We upheld recovery for 'mental suffering' in *Crisci v. Security Ins. Co., supra,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173, since an action against an insurer for breach of its implied duty of good faith sounds in tort as well as contract. . . .

. . . We concluded with the following (pp. 433–34, 58 Cal.Rptr. p. 19, 426 P.2d p. 179): 'We are satisfied that a plaintiff who as a result of a defendant's tortious conduct *loses his property* and *suffers mental distress* may recover not only for pecuniary loss but also for his mental distress. (Emphasis in original)

In *Crisci* we did not suggest that to warrant recovery for mental distress the conduct of the insured must be 'outrageous' or that the mental distress must be 'severe.' We explained that '[t]he principal reason for limiting recovery of damages for mental distress is that to permit recovery of such damages would open the door to fictitious claims, to recovery for mere bad manners, and to litigation in the field of trivialities. [Citation.] *Obviously, where . . . the claim is actionable and has resulted in substantial damages apart from those due to mental distress, the danger of fictitious claims is reduced . . . .' (Id.* at p. 434, 58 Cal.Rptr. at p. 19, 426 P.2d at p. 179.)

. . . . .

Here, plaintiff alleged that he suffered substantial economic losses apart from mental distress. He alleged that he suffered loss of earnings; that he was compelled to go out of business and that as a result he was unable to pay his business creditors; that he incurred the costs of defending lawsuits brought against him

by his creditors; and that he incurred medical expenses. *We conclude, therefore, that since plaintiff has alleged substantial damages for loss of property apart from damages for mental distress, the complaint is sufficiently pleaded with respect to the latter element of damages."*

108 Cal.Rptr. at 489–490, 510 P.2d at 1041–42. (emphasis added) Appellants suggest that the request for rescission of the loan contract, the sending of a refund check covering the premium for the policy's sixth year, and the delay in payment of disability payments for six months represent an infringement upon their property rights which caused them to suffer mental distress.

However, First National Bank is correct in its counter-argument that no one has refused to pay insurance benefits to which the Davises are presently entitled, and that First National's request for a mutual rescission of the loan contract did not result in any loss to the Davises. Similarly, the attempt to reduce the credit disability coverage from six to five years did not result in any loss to the Davises. The loss claimed by the Davises was speculative and premature.

■ Disability payments were only payable by Occidental under certain circumstances. That is, Occidental was responsible for such payments as long as Mr. Davis was alive, remained disabled, and there was an unpaid balance on the loan. A breach of the contractual agreement could only occur if the preceding requirements were met and if Occidental refused to pay the sixth year installment after the due date for the first installment in the sixth year, and if First National Bank attempted to collect the installment from the Davises.

■ Appellants' characterization of the attempt to reduce the coverage as an anticipatory breach or as an actual breach also fails to cure the defect in their claim. The contract was rendered unilateral by the full performance of the Davises. Appellees could not breach what had become a unilat-

eral contract until the time for performance had arrived. In *Kammert Bros. Enterprises v. Tanque Verde Plaza Co.*, 4 Ariz.App. 349, 420 P.2d 592 (1966), *vacated on other grounds*, 102 Ariz. 301, 428 P.2d 678 (1967), the court stated:

"Generally, the doctrine of anticipatory breach does not apply to a contract rendered unilateral by full performance on the part of one of the contracting parties. 17A C.J.S. Contracts § 472(2) 6, p. 662; 17 Am.Jur.2d Contracts § 455, p. 919. We believe the following statement from the Restatement of the Law of Contracts to be valid:

'§ 318. Anticipatory Repudiation As A Total Breach

\* \* \* \* \* \*

Comment:

\* \* \* \* \* \*

*e.* The doctrine of anticipatory breach is not extended to unilateral contracts unless the promisor's duty is conditional on some future performance by the promisee. It is immaterial whether the contract was originally thus unconditionally unilateral or has become so by the performance of one party. In neither case can a breach arise before the time fixed in the contract for some performance. *There must be some dependency of performances in order to make anticipatory breach possible.*' "

4 Ariz.App. at 363, 420 P.2d at 606 (emphasis supplied). There was not an *actual breach* because the time for performance had not yet arrived. *Taylor v. Johnston*, 15 Cal.3d 130, 137, 123 Cal.Rptr. 641, 646, 539 P.2d 425, 430 (1975); *Restatement of Contracts* § 318, comment b (1932). Therefore, the appellants were not entitled to damages, did not sustain a "loss of property", and consequently cannot recover under the cause of action for breach of implied duty of good faith and fair dealing or under the cause of action for breach of contract.

## IV.

The final issue on appeal is the appellants' contention that the trial court erred in granting summary judgment on the claim for fraudulent misrepresentation. The appellants' claim is based on the discrepancy between the Occidental five-year limitation on coverage and the representation by First National Bank that the insurance would cover the entire six-year term of the loan.

■ A claim for fraudulent misrepresentation must contain the following elements:

"(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury."

*Moore v. Meyers*, 31 Ariz. 347, 354, 253 P. 626, 628 (1927). *Accord, e. g., Carrel v. Lux*, 101 Ariz. 430, 420 P.2d 564 (1966); *Nielson v. Flashberg*, 101 Ariz. 335, 419 P.2d 514 (1966); *Denbo v. Badger*, 18 Ariz.App. 426, 503 P.2d 384 (1972). If a claim lacks any of the preceding elements, it is not actionable. *Nielson v. Flashberg*, 101 Ariz. at 338, 419 P.2d 514; *Denbo v. Badger*, 18 Ariz.App. at 429, 503 P.2d 384. The appellees contend that the appellants' claim is not actionable because the ninth element, consequent and proximate injury, is missing.

■ The Davises allege that they are confronted with a claim for monthly payments of approximately $1,023.00 which should have been covered by the insurance as it was represented to them. However, the Davises have not yet had to pay the installments which will be due in the sixth year, and as noted previously, the disability payments would only be payable by Occidental under certain circumstances.

Precedent also indicates that the Davises' claim lacks the degree of certainty necessary to establish injury. In *Denny v. Brissonneaud*, 161 Mont. 468, 506 P.2d 77 (1973), the court dealt with an action for damages for fraudulent misrepresentation involving sale of a residence. The court granted defendants' motion for directed verdict and cited the following authority:

"Generally speaking, the injury or damage which the plaintiff must prove must be something more than contingent damage which may or may not occur. 37 C.J.S. *Fraud* § 41f, p. 294."

506 P.2d at 79.

Similarly, in *Middleton v. J.M.A. Construction Co., Inc.,* 47 A.D.2d 544, 363 N.Y. S.2d 100 (1975), plaintiffs brought an action for fraudulent misrepresentation, alleging that false representations concerning financing arrangements induced them to enter into a contract with J.M.A. Construction Co. Plaintiffs further claimed that they sustained damage as a consequence of the fraud because the construction company did not do the work as promised but still received payment. Plaintiffs claimed they were compelled to sue the construction company for breach of contract and entailed an obligation for attorney's fees not recoverable in a contract action. The court stated:

"In fact, plaintiffs have sustained no damage. Appellants have sought to collect on the promissory notes which evidence plaintiffs' indebtedness. In the event that appellants take such action, plaintiffs can interpose any defenses they may have at law. Accordingly, the complaint should be dismissed as against appellants."

363 N.Y.S.2d at 101.

Since the appellants' claim is lacking the requisite element of consequent and proximate injury, the trial court's granting of summary judgment on the Davises' claim for fraudulent misrepresentation is also affirmed.

WREN, P. J., and DONOFRIO, J., concur.