**Helen McDERMOTT, Plaintiff,**

v.

**TRAVELLERS AIR SERVICES, INC., Defendant.**

Civ. No. 77–986.

United States District Court, M. D. Pennsylvania.

Dec. 27, 1978.

As Modified Feb. 22, 1979.

[REDACTED]

Arthur T. McDermott, Carlisle, Pa., for plaintiff.

Craig A. Stone, Harrisburg, Pa., for defendant.

## OPINION

MUIR, District Judge.

### I. Introduction.

The Plaintiff, Helen McDermott, a resident of Arizona, filed this diversity action alleging that she was injured by the negligence of the Defendant, Travellers Air Services, Inc., a corporation with its principal place of business in New York, and that a purported agent or employee of the Defendant, Madge O'Sullivan, a resident of Ireland, intentionally inflicted emotional distress upon her. The issue of liability was tried before the undersigned judge sitting with an advisory jury from December 4 through December 6, 1978. The advisory jury returned answers to a series of special verdict questions indicating that Travellers Air Services was not negligent, that Mrs. McDermott was not contributorily negligent and that Madge O'Sullivan did not intentionally inflict emotional distress on Mrs. McDermott. The following represent the Court's findings of fact, discussion, and conclusions of law.

### II. Findings of Fact.

1. On or about May 1, 1977, AAA Travel, Carlisle, Pennsylvania, provided and made available to Arthur T. McDermott, son of the Plaintiff and her counsel, a TWA Charter Europe Travel Brochure containing terms and conditions of the trip.

2. The tour operator for the trip to Ireland was the Defendant. (Undisputed)

3. Page 35 in the Brochure (Plaintiff's exhibit) provides in part that ". . . neither the operator nor . . . its cooperating organizations shall be responsible for cancellations . . . Nor shall they be liable . . . for injury . . . arising from . . . negligence of any person not its direct employee or under its exclusive control."

4. A booking form was signed by Mr. McDermott on behalf of Plaintiff (Plaintiff's exhibit 1). (Undisputed)

5. The booking form provided in part that Arthur T. McDermott had read and accepted the "conditions shown on p. 35 of TWA charter Europe brochure on behalf of . . . ." Plaintiff.

6. Mr. McDermott did not read p. 35 of the brochure before he signed the booking form.

7. Title 14 of the Code of Federal Regulations § 378.17(h) states that a tour operator such as the Defendant may contract that in the absence of negligence on the part of the operator he is not responsible for injury arising out of the negligence of any person rendering any of the services or accommodations being offered in the tour.

8. The aircraft for the trip on which Plaintiff travelled was chartered by Defendant from TWA. (Undisputed)

9. Defendant orally contracted for land arrangements in connection with the tour with Travellers International AG, a Swiss corporation having principal offices in Basle, Switzerland.

10. On July 28, 1978, Travellers International AG contracted with the Torc Great Southern Hotel to provide hotel accommodations in Kilarney, Ireland, from April 1, 1977, to October 31, 1977, for tours, one of which was the tour on which Plaintiff travelled. (Defendant's Exhibit 3).

11. Travellers International AG arranged for the conduct of the land tour by Travellers International Ireland, Ltd. of Dublin, Ireland.

12. Travellers International Ireland Ltd., employed Madge O'Sullivan as tour director for tours including the one on which Plaintiff travelled. (Plaintiff's exhibits 29 and 30).

13. Plaintiff departed the United States on tour No. TC8905 from New York's Kennedy Airport on June 18, 1977. (Undisputed)

14. The tour was satisfactory to Plaintiff in all respects until June 20, 1977.

15. On June 20, 1977 Plaintiff fell as she stepped from the bathtub between 5:30 P.M. and 6:00 P.M. at the Torc Great Southern Hotel in Kilarney.

16. In the evening hours of June 20, 1977, Ms. O'Sullivan learned of the fall, met with the Plaintiff and hotel manager and Plaintiff was supplied ice to relieve pain in her wrist which had been injured in the fall.

17. On June 21, 1977, Plaintiff participated in a group picture, and a "jaunting cart ride."

18. After the activities referred to in the preceding paragraph later on June 21, 1977, Plaintiff requested a doctor.

19. Immediately after her request and on June 21, 1977, Plaintiff was seen by P. Fuller, M.D. of "Glenmore," [sic] St. Anne's Road, Kilarney, County Kerry, Ireland. (Undisputed)

20. Dr. Fuller was an independent physician.

21. Dr. Fuller indicated a diagnosis of "fairly severe sprain of the left wrist" in his report. (Plaintiff's exhibit # 6). (Undisputed)

22. Dr. Fuller advised Plaintiff to have her wrist "checked, x-rayed next day in route (sic), to eliminate fracture of her smaller wrist bones."

23. Dr. Fuller's report indicates he treated Plaintiff for pain, shock and a sprained wrist and advised immobilization in a sling. (Undisputed)

24. Plaintiff personally paid Dr. Fuller his fee for the consultation. (Undisputed)

25. One June 22, 1977, Ms. O'Sullivan presented Plaintiff with a Release form to sign. (Defendant's Exhibit 2.)

26. The Release form was on the letterhead of Travellers International (UK) Ltd., 93 Newman Street, London, England.

27. The Release makes no mention of Defendant. (Undisputed)

28. Plaintiff refused to sign the form.

29. Plaintiff was seen on July 5, 1977, by Dr. Thomas S. Armstrong in Carlisle, Pennsylvania. (Undisputed)

30. The Torc Great Southern Hotel in Kilarney is listed in the official Hotel and Resort Guide as a "modern, first-class motor hotel" and it enjoys a government "A" rating which is the highest rating issued.

31. Plaintiff does not know the cause of her fall from the tub.

32. None of the witnesses other than Plaintiff saw Plaintiff's bathroom at the hotel.

33. All of the Travellers Organizations mentioned in these findings of fact use a common logo.

34. Following Dr. Fuller's visit to Mrs. McDermott's room Madge O'Sullivan promised to provide a sling for the Plaintiff's arm and help in packing her luggage but did neither.

35. The morning after the events described in the preceding paragraph Madge O'Sullivan walked past Mrs. McDermott without speaking to her.

36. At one stop during the tour Madge O'Sullivan told the group that she hoped none of the old people would engage in a particular activity and then added that she was not referring to an 88-year-old gentleman.

37. Mrs. McDermott was in her late sixties during the summer of 1977.

38. Madge O'Sullivan made the comment "Even Mrs. McDermott is here" at a time when several people were late in returning from a particular excursion.

39. Twice during the tour, once in a hotel lobby and once at the grave of William Butler Yeats, Madge O'Sullivan, upon seeing Mrs. McDermott near her, threw up her hands and exclaimed "Oh my God!"

40. On the tour bus outside a crystal factory Mrs. McDermott asked Madge O'Sullivan three times if the factory sold figurines but received no response.

41. In Dublin, Madge O'Sullivan told Mrs. McDermott that the former was unaware of the location of the National Kennel Club.

42. Madge O'Sullivan once expressed surprise that Mrs. McDermott would be going to a night club.

43. In Galway, Madge O'Sullivan assigned three people including the Plaintiff to the same hotel room.

44. Mrs. McDermott described Madge O'Sullivan's actions as being "constant, petty needling."

45. Mrs. McDermott told Madge O'Sullivan "You have added ten years to my life" whereupon Madge O'Sullivan replied "You have added ten years to mine."

46. Travellers Air Services, Inc. is wholly owned by David Seegul who is also its president.

47. David Seegul is also president of Travellers International Tour Operators, Inc. which is a wholly-owned subsidiary of Travellers International AG Basle.

48. Travellers International AG Basle contracted with Travellers International U.K. Ltd., and Travellers International Ireland Ltd. for some of the services provided to participants in the Charter Europe Tours.

### III. Discussion.

The Plaintiff in this case, Helen McDermott, filed this action originally against Trans World Airlines, Inc. and Travellers Air Services, Inc., alleging that those parties were responsible for injuries which Mrs. McDermott suffered as a result of a fall in a bathroom of the Torc Great Southern Hotel in Kilarney, Ireland on June 20, 1977 and for pain and suffering which she experienced following the fall as a result of an Irish doctor's failure properly to diagnose her injury as a broken wrist and to treat it accordingly, and that the parties were responsible for the actions of Madge O'Sullivan, the director of the tour in which Mrs. McDermott was participating during her stay in Ireland. On June 19, 1978, the Court granted Defendant Trans World Airlines, Inc.'s motion for summary judgment and the Clerk entered judgment in favor of Trans World Airlines and against Mrs. McDermott on that day. Consequently, Travellers Air Services, Inc. (TAS) is the only Defendant remaining in the case. It is the view of the Court that, based upon the facts established at trial, Mrs. McDermott is not entitled to prevail on any of her claims against TAS. The Court will consider each of her claims separately along with the defenses raised by TAS.

First, the Court will consider the events surrounding Mrs. McDermott's injuries. The Court has determined that between 5:30 and 6:30 on June 20, 1978, Mrs. McDermott, following her registration at the Torc Great Southern Hotel in Kilarney, Ireland, slipped and fell as she was leaving the bathtub, sustaining what later proved to be a broken wrist as well as a cut to her forehead. Mrs. McDermott was at the Torc Great Southern Hotel as a result of arrangements made for her tour group to stay there. The tour, which was conducted by the Defendant as the "tour operator," included arrangements for hotel accommodations made by Travellers International Ltd. of Ireland at the request of Travellers International A.G. with offices in Basle, Switzerland. Mrs. McDermott claims that TAS, as the tour operator, had a duty to inspect the facilities at the Torc Great Southern Hotel and that the failure to inspect those facilities was a proximate cause of her injury.

There are several reasons why Mrs. McDermott should not prevail on this claim. First, however, it is necessary to explain briefly the law which the Court will apply to this claim of negligence and to Mrs. McDermott's claim that Travellers International Limited of Ireland and the Torc Great Southern Hotel were agents of TAS. Because this is a diversity case, the Court must apply the choice of law rules of the state in which it sits. *See Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 847, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania applies the law of the state which has the greatest interest in the application of its law to the particular issue involved. *See Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970). Mrs. McDermott is an Arizona resident. The contract relating to the tour of Ireland was purchased by Mrs. McDermott's son, Arthur T. McDermott, in Pennsylvania from a Pennsylvania travel agency. TAS is a Delaware corporation with a principal place of business in New York. The alleged injuries occurred in Ireland. It

is the view of the Court that because this Court's decision on an issue of negligence would have little, if any, effect upon conduct of persons in Ireland, that jurisdiction has little or no interest in having its law applied. The Court is of the view that the law of negligence is fairly uniform throughout the United States and the parties have not brought to the Court's attention any conflict between the negligence law of Arizona, Pennsylvania, and New York and the Court's research in the state law library on the law of negligence in those states applicable to the facts of this case does not reflect any conflict. As in Pennsylvania, a party may recover from another on a claim sounding in negligence only if he can prove the commission of an act which a reasonably prudent person would not have performed or the omission of an act such a person would have performed under all the circumstances in the case coupled with an injury to the claimant proximately arising from the negligent act or omission. *See, e. g., Morris v. Ortiz,* 103 Ariz. 119, 437 P.2d 652 (1968); *Pompeii Estates, Inc. v. Consolidated Edison Co.,* 91 Misc.2d 233, 397 N.Y. S.2d 577 (1977). Therefore, the Court will apply the law of Pennsylvania to the claim of negligence.

■ First, with respect to Mrs. McDermott's claim that TAS or one of its agents were negligent, it is the view of the Court that Mrs. McDermott failed to meet her burden of establishing that anyone was negligent or that such negligence contributed in any way to the injuries which she suffered on June 20, 1977. The entire testimony surrounding the issue of negligence was that Mrs. McDermott slipped and fell and that she had no idea why she did so. In other words, the only evidence before the Court is the happening of an accident with no explanation as to why it occurred. Although Mrs. McDermott was clearly present in her bathroom at the Torc Great Southern Hotel and counsel made some reference in his opening remarks to the height of the side of the bathtub being a contributing factor, Mrs. McDermott did not testify to the physical layout of the bathroom, the height of the side of the tub, or any conditions other than a wet bathmat which

might have contributed to her fall. It is impermissible to infer negligence from the happening of an accident alone. *See Dubois v. Wilkes-Barre,* 410 Pa. 155, 189 A.2d 166 (1963). Therefore, the Court concludes that Mrs. McDermott failed to meet her burden of establishing what was the cause of her fall by either direct or circumstantial evidence and in that situation the inference of a breach of duty on the part of the Defendant or any of its purported agents is not supportable. Such a conclusion by the Court obviates the need to reach the question of whether Travellers International Ltd. of Ireland or the Torc Great Southern Hotel were agents of the Defendant. Even assuming that they were agents, however, the evidence in the case conclusively establishes that neither was a direct employee or under the exclusive control of Travellers Air Services, Inc.

■ As a defense, Travellers Air Services, Inc. asserted that Mrs. McDermott was bound by the terms on page 35 of the brochure relating to her trip to which Arthur McDermott agreed when he signed the booking form. Although Mr. McDermott stated that he did not read page 35 of the brochure prior to signing the booking form and giving the trip to his mother as a Mother's Day present, the form itself indicates that the person signing it has read and agrees to those terms and it is the view of the Court that the terms are binding upon Mrs. McDermott. Those terms state that the tour operator, Travellers Air Services, Inc. is not responsible for negligence of persons who are not its direct employees or under its exclusive control. Mrs. McDermott has argued that such an exculpatory clause is void as being in contravention of public policy and against Pennsylvania law. However, the Court is convinced that the resolution of the question of whether the terms in the brochure were effective to absolve TAS of responsibility for any negligence on the part of either Travellers International Ltd. of Ireland or the Torc Great Southern Hotel is a question of federal law. The conduct of overseas tours such as the one involved in this case is subject to regulation by the Civil Aeronautics Board.

Such regulations are found in Title 14 C.F.R. § 378 et seq. Of particular importance to this case is 14 C.F.R. § 378.17(h) which states that "the tour operator [TAS] is the principal and is responsible to the participants in making the arrangements for all tour services and accommodations offered as constituting the tour [but] that this requirement does not preclude the tour operator from expressly providing . . . that in the absence of negligence on the part of the tour operator, he is not responsible for personal injury or property damage arising out of the action or negligence of any direct air carrier, hotel, or other person rendering any of the services or accommodations being offered in [the] tour." Clearly, the exculpatory language on page 35 of the brochure fits within the regulatory exception and the Torc Great Southern Hotel and Travellers International Limited of Ireland meet the definition of "hotel" or "other person rendering any of the services or accommodations being offered in [the] tour." The United States clearly has an interest in the application of its regulations to companies who operate inclusive tour charters and such interest outweighs whatever policy may exist in particular states respecting the effect of exculpatory clauses in contracts. Further, 14 C.F.R. § 378.17(h) represents a declaration of public policy by the federal government which cannot be contravened by any state policy which allegedly prohibits exculpatory clauses from taking effect. *See generally Bank of America v. Parnell*, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956); *Clearfield Trust Company v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

Mrs. McDermott also apparently alleges that the treatment which she received following her injury constituted negligence on the part of agents of the Defendant and contributed to an increase in the pain which she otherwise would have suffered had her problem been diagnosed originally as a fractured wrist. Originally, Mrs. McDermott claimed that the doctor who treated her, Dr. P. Fuller, was negligent in failing to make the proper diagnosis. However, at trial, Mrs. McDermott withdrew that contention because she had been unable to establish any relationship at all between the Defendant and Dr. Fuller. Further, no evidence was produced at trial relating to the standard of care applicable to a physician in Kilarney, Ireland and no medical testimony was presented as to whether Dr. Fuller's diagnosis and treatment were correct. Therefore, his negligence or lack thereof is not an issue in this case.

■ Mrs. McDermott also contends that the tour director, Madge O'Sullivan, purportedly an agent of the Defendant, was negligent in that she did not call a physician for Mrs. McDermott on the night on which she was injured, and that after Dr. Fuller wrapped Mrs. McDermott's wrist in an ace bandage and suggested that she place the arm in a sling, Ms. O'Sullivan promised to get her a sling but failed to do so. It is the view of the Court that whether Madge O'Sullivan acted reasonably under the circumstances or committed any acts which a reasonably prudent person would not have done or omitted to do anything which a reasonably prudent person would have done is not an issue in this case. Assuming that she was negligent, there is no responsibility on the part of TAS even without the exculpatory language because the Court is not convinced that Ms. O'Sullivan was an agent of TAS. Such a determination is unnecessary in the light of this record, however, because of the exculpatory clause on page 35 of the travel brochure. The evidence in the case establishes that Ms. O'Sullivan was neither a direct employee nor under the exclusive control of Travellers Air Services. Rather, Ms. O'Sullivan was hired by Travellers International Ltd. of Ireland, all complaints or other comments relating to the tour director which were received by the Defendant were referred to Travellers International Ltd. of Ireland and Travellers Air Services exercised no control over or influence over Ms. O'Sullivan's actions. Therefore, there is no basis for liability with respect to Ms. O'Sullivan's treatment of Mrs. McDermott following the injury.

■ Mrs. McDermott also alleges that Madge O'Sullivan committed the tort of intentional infliction of emotional harm fol-

lowing Mrs. McDermott's refusal to sign a form releasing Travellers International Ltd. of Ireland from liability with respect to the accident. Mrs. McDermott contends that Madge O'Sullivan embarked upon a pattern of conduct designed to harass her and cause her mental distress. However, it is the view of the Court that the instances of conduct proven by Mrs. McDermott at trial do not meet the strict standard required for a finding that the tort of intentional infliction of emotional distress has been committed. The advisory jury returned with a finding in accordance with the Court's view.

Again, it is the view of the Court that there is no real conflict in the law of the various states with interests and this cause of action. The fora with the most significant relations to the parties in this case would be Arizona and Ireland because the person who allegedly committed the tort is a resident of Ireland and the Plaintiff is a resident of Arizona. The tort does not relate to the contract between the parties which would seem to exclude Pennsylvania as being an interested state and only tangentially relates to New York in that the Defendant has its principal place of business in New York. However, the alleged tort did not occur in New York and TAS, if it is liable, would be so only on an agency theory. This Court has no idea what the law of Ireland relating to intentional infliction of emotional distress is but concludes that such a determination is not necessary in this case. As the Court determined when ruling upon Trans World Airlines' motion for summary judgment, Arizona would appear to have the greatest interest in having its law applied so as to protect its citizens from the intentional infliction of emotional distress. The law of Arizona is similar to the law of Pennsylvania and other states which have adopted section 46 of the Restatement of Torts 2d relating to intentional infliction of emotional distress. That section states that one who by extreme and outrageous conduct intentionally or recklessly causes severe or emotional distress to another is subject to liability for such emotional distress and if bodily harm to the other results from it, for such bodily harm. *See Bendalin v. Valley National Bank of*

*Arizona,* 24 Ariz.App. 575, 540 P.2d 194 (1975). Outrageous conduct is defined as conduct or statements which go beyond all bounds of decency and are regarded as utterly intolerable in a civilized community. *See Hixon v. State Compensation Fund,* 115 Ariz. 392, 565 P.2d 898 (1977). It is clear that there is no evidence of such outrageous conduct in this case. Although the statements made by Ms. O'Sullivan may have been ill advised and may have hurt Mrs. McDermott's feelings, they do not rise to the level of conduct which is not tolerated by civilized communities. Such statements pale in contrast even to those made in *Chuy v. Philadelphia Eagles Football Club,* 431 F.Supp. 254 (E.D.Pa.1977), a case in which a physician made a statement that a football player was suffering from a fatal disease when, in fact, he was not. The District Court decision in that case is now under review by the Court of Appeals en banc. It is the view of the Court that however unfortunate it may have been, conduct such as that engaged in by Madge O'Sullivan is a commonplace in our society and is not so intolerable as to exceed all bounds of decency. The fact that an advisory jury drawn from a cross-section of the community agrees with the Court's conclusion is further support for it. Even assuming that the conduct of Madge O'Sullivan constituted intentional infliction of emotional distress, again, Travellers Air Services would not be liable for any harm resulting therefrom because of the exculpatory language on page 35 of the brochure.

Based upon the foregoing discussion, the Court reaches the following

## IV. Conclusions of Law.

1. Defendant Travellers Air Services, Inc. is not liable to the Plaintiff for any harm resulting to her which occurred as a result of acts of negligence by persons not under the exclusive control of or direct employees of Travellers Air Services, Inc.

2. Madge O'Sullivan was not under the exclusive control of or a direct employee of Travellers Air Services, Inc.

3. The Torc Great Southern Hotel was not under the exclusive control of or a direct employee of Travellers Air Services, Inc.

4. Travellers International Ltd. of Ireland was not under the exclusive control of or a direct employee of Travellers Air Services, Inc.

5. Mrs. McDermott's fall in her bathroom in the Torc Great Southern Hotel on June 20, 1977 was not proximately caused by negligence on the part of the Defendant Travellers Air Services, Inc., Travellers International A.G. Basle, Travellers International U.K. Ltd., Travellers International Ireland Ltd., the Torc Great Southern Hotel, or Madge O'Sullivan.

6. Madge O'Sullivan did not intentionally inflict emotional distress upon Mrs. McDermott.