Myra LYALL,

v.

AIRTRAN AIRLINES, INC. and
Emily M Travel, Inc.

No. CIV. A. 00–1937.

United States District Court,
E.D. Pennsylvania.

Aug. 8, 2000.

Arthur Alan Wolk, Wolk & Geneter, Philadelphia, PA, for plaintiff.

Peter G. Erdely, Joseph J. Hamill, Rawle & Henderson, Philadelphia, PA, for defendants.

## MEMORANDUM

DALZELL, District Judge.

Plaintiff Myra Lyall alleges claims of negligence, gross negligence, and breach

of contract of carriage against AirTran Airlines, Inc. ("AirTran") and also asserts claims of negligence and breach of contract against Emily M Travel, Inc. ("Emily M"). We now consider her motion to remand this case to Pennsylvania state court.

## I. *Factual and Procedural Background*

While details of Lyall's allegations will be discussed where pertinent below, we briefly summarize this suit here.

Lyall, a citizen and resident of New Zealand, contacted Emily M, a Pennsylvania corporation with its principal place of business in Pennsylvania, for the purpose of purchasing an airline ticket for one-way travel between Philadelphia and Chicago. Emily M sold her tickets on AirTran, a Nevada corporation with its principal place of business in Florida, for two flights on May 7, 1998: a flight from Philadelphia to Atlanta, and a connecting flight from Atlanta to Chicago.

On that AirTran Flight 426 from Atlanta to Chicago, the flight crew decided to fly through heavy weather in the flight path rather than divert around it, despite such weather having been seen and predicted before take-off. When the plane flew through this heavy weather, the aircraft encountered severe turbulence, which caused the overhead storage bins to open. This opening caused luggage to fall from the bin and hit Lyall on the head and neck, resulting in a bone fracture in her neck.

On these facts, Lyall brings five counts against AirTran and Emily M. Count I alleges negligence against AirTran, claiming, among other things, that AirTran was negligent in flying through the heavy weather and in failing to ascertain that the luggage bins were latched. Count II asserts breach of contract of carriage against AirTran, alleging that the airline had violated an implied agreement to exercise the highest degree of care required of a common carrier. Count III alleges negligence against Emily M, claiming, among other things, that Emily M was negligent in selecting AirTran as an airline for travel. Count IV alleges breach of contract against Emily M, on the theory that Emily M had violated its oral contract with Lyall to select an airline that would safely fly Lyall to Chicago. Count V asserts gross negligence against AirTran, alleging that AirTran had a corporate culture of violating federal aviation regulations that led to the incident at issue here.

This case was originally filed in the Court of Common Pleas for Philadelphia County, and AirTran subsequently removed it here. In its notice of removal, AirTran argued that though Emily M is a Pennsylvania citizen, this fact did not destroy diversity jurisdiction because Emily M was in fact fraudulently joined for the sole purpose of defeating federal diversity jurisdiction.[1]

Lyall has now timely moved for remand under 28 U.S.C. § 1447(c), arguing that there was no fraudulent joinder, and that removal was thus improper.[2]

---

**1.** In the notice of removal, AirTran argues that the presence of Emily M would "defeat diversity jurisdiction," Not. of Removal ¶ 9. In fact, as Lyall argues in passing and as AirTran appears to concede in subsequent pleadings, *see* AirTran's Mem. of Law in Opp'n to Mot. to Remand at 4, even with Emily M as a defendant there appears to be diversity jurisdiction here pursuant to 28 U.S.C. § 1332(a)(2). However, as Emily M is a Pennsylvania citizen, it is unquestionable that removal of this case would be improper if Emily M were a properly joined defendant, since pursuant to 28 U.S.C. § 1441(b) a case may not be removed to federal court if one of the defendants is a citizen of the state in

which the action was brought. Thus, in any event, our decision comes down to the question of whether Emily M was fraudulently joined as a defendant.

**2.** We note initially that there is no dispute as to the pertinent states of citizenship or that the jurisdictional amount would not be met. We also note that in its response to the motion to remand, AirTran argues that the named defendant "AirTran Airlines, Inc." is in fact dissolved and that the proper defendant is instead "AirTran Airways, Inc.", but neither AirTran nor Lyall makes any claim that this error would alter the diversity/fraudulent joinder analysis.

## II. *Analysis*

### A. *Legal Standards for Remand* [3]

■ In general, "the removal statute should be strictly construed, and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir.1985). When a non-diverse party—or one that, as here, would otherwise prevent removal—has been joined as a defendant, the only way (absent a federal question [4]) for a removing defendant to avoid remand is to demonstrate that the non-diverse party was fraudulently joined, and, in so demonstrating, the removing party bears a "heavy burden of persuasion." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992). "Joinder [of a party] is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990) (internal quotations omitted).

■ In making this inquiry, we must resolve all contested facts in the plaintiff's favor and also must resolve all uncertainties as to the current state of the applicable substantive law in her favor. *See id.* Moreover, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the [non-diverse] resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Batoff*, 977 F.2d at 851 (quoting *Boyer*, 913 F.2d at 111).

■ Here, therefore, in deciding whether Emily M was fraudulently joined, we must examine Lyall's Complaint [5] and assess whether she states a colorable cause of action against Emily M under Pennsylvania law. [6] Importantly, though, our inquiry must not be too deep. Simply because we come to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure

---

Two additional issues merit brief attention here. First, after the case was removed, but before Lyall filed her motion to remand, Emily M filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). As will be made clear below, such a motion made in parallel with a claim of fraudulent joinder essentially becomes moot, since the Rule 12(b)(6) standard is subsumed into the fraudulent joinder inquiry. Nonetheless, we take the arguments made in Emily M's motion, as well as those made in Lyall's response and Emily M's reply, into account in considering the issue of fraudulent joinder.

Second, in her motion to remand, Lyall argues that we should remand this case because the notice of removal was not filed within thirty days after the Complaint was served. As we find below that Emily M was not fraudulently joined, we need not reach this question.

3. We have adapted this statement of the applicable legal standards from our Memorandum in *Carter v. Philip Morris Corp.*, 106 F.Supp.2d 768, 769–70 (E.D.Pa.2000), in which we addressed a similar question of fraudulent joinder.

4. Defendants do not allege that there is federal question jurisdiction here.

5. The fraudulent joinder analysis focuses on the Complaint as it existed at the time of removal, *see Batoff*, 977 F.2d at 851–52. As Lyall has made no effort to amend her Complaint, there is no dispute here as to the version of the Complaint to consult.

6. The parties do not address the question of choice of law, notwithstanding the interstate nature of this case. We observe that Emily M is a Pennsylvania citizen, and the allegations regarding Emily M are made in connection with its duties pursuant to a transaction that was negotiated and consummated in Pennsylvania for a trip that commenced in Pennsylvania. Both Lyall and AirTran implicitly accept the application of Pennsylvania law by basing their arguments on Pennsylvania cases. We therefore will apply Pennsylvania law to the allegations against Emily M, *see Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796, 805 (1964) (adopting a flexible approach to choice of law, allowing consideration of "the policies and interests underlying the particular issue before the court"), *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that federal courts should apply choice of law rules of the forum state).

to state a cause of action does not mean that the defendant's joinder was fraudulent. *See Batoff,* 977 F.2d at 852. In this context, our familiar standards of analysis under Fed.R.Civ.P. 12(b)(6) are inapplicable and, instead, the test is whether the plaintiff's claims are not even "colorable", which is to say, "wholly insubstantial and frivolous". *Id.*[7] Consequently, if we must make a penetrating or intricate analysis of state law in order to determine if the claim is colorable then it is likely that the claim is indeed colorable and not frivolous. *See id.* at 853.[8]

With these standards in mind, we now examine Lyall's allegations against Emily M.

### B. *Assessment of Lyall's Claims Against Emily M*

#### 1. *Negligence*

■ In Count III of the Complaint, Lyall alleges that Emily M owed Lyall a duty to exercise due care in providing travel agent services. Lyall claims that Emily M violated this duty by, *inter alia,* (1) selecting an airline that had established a willful and wanton disregard for the legal requirements for operating a safe airline, (2) selecting an airline that had changed its name in order to confuse the public, (3) failing to inform Lyall that AirTran was the same airline as ValuJet, and (4) failing to inform Lyall of information that would have led Lyall to seek other transportation. Lyall alleges that as a result of this negligence, Emily M picked AirTran for Lyall's travel and that, consequently, Lyall was injured.

Our task here is, as noted above, to assess whether such claims are "colorable" under Pennsylvania law or whether, conversely, they are instead "wholly insubstantial and frivolous." It is important to note at the outset that published Pennsyl-

---

**7.** We also observe that the converse is true-if we decide that the joinder is indeed fraudulent, then we must be prepared to dismiss all claims against Emily M. That is, having decided that the complaint states no "colorable" claim against Emily M, then *a fortiori* we must hold that these claims fail to meet the Fed.R.Civ.P. 12(b)(6) threshold.

**8.** AirTran argues that, in assessing whether joinder is fraudulent, we may "pierce the pleadings," to consider various affidavits they and Emily M have attached to their pleadings. In support of this practice, they cite to a decision by a court in the Eastern District of Louisiana for the proposition that our inquiry here is not unlike that done at summary judgment. We cannot agree with this position. "Assuming some piercing is appropriate to decide whether [the plaintiff has] asserted a 'colorable' ground supporting the claim against the joined defendant, that inquiry is far different from the summary judgment type inquiry made by the district court," *Boyer,* 913 F.2d at 112. In turn, however, *Boyer* did cite with approval *Smoot v. Chicago, Rock Island & Pacific R.R. Co.,* 378 F.2d 879 (10th Cir.1967). There, the panel held that "[w]hile issues of liability may not ordinarily be determined on a motion to remand, it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal," *Smoot,* 378 F.2d at 881–82.

To appreciate the depth of this permissible "piercing", it is helpful to examine the circumstances addressed in *Smoot.* That case involved claims resulting from a collision between a train and a car in which the motorist was killed. In addition to the railroad, the plaintiff joined as a defendant one Edward Bartholomew, who allegedly was an employee of the railroad responsible for the maintenance of safety signals that had contributed to the accident. In considering claims that Bartholomew was fraudulently joined, district court considered an uncontested affidavit to the effect that Bartholomew had ceased working for the railroad over a year before the accident alleged, and the appellate panel affirmed the district court's denial of the plaintiff's motion to remand. The panel noted that the undisputed evidence "established with complete certainty" Bartholomew's "non-liability", *Smoot,* 378 F.2d at 882.

Therefore, while *Smoot* did pierce the pleadings, it did so to consider an affidavit that completely divorced the challenged defendant from the allegations and left no doubt that the defendant was improperly joined. To the extent that we consider affidavits and other materials from the parties beyond the pleadings, we must thus be conscious of the high threshold *Smoot* exemplified.

vania case law on the duties and liability of travel agents is quite thin: the parties have not cited, nor have we been able to find, any Pennsylvania appellate court decisions on this issue. We are not the first to note this paucity of precedent: "The scope and nature of the duty which a travel agent owes to its client has neither been considered by many courts nor singularly defined by those courts which have considered the issue." *Loretti v. Holiday Inns, Inc.*, No. 85–709, 1986 WL 5339 at *3 (E.D.Pa. May 6, 1986). On the other hand, there are two Pennsylvania trial court opinions that discuss travel agency liability, which we will now review.

In *Slade v. Cheung & Risser Enters., Inc.*, 10 Pa.D. & C.3d 627 (C.P.Cumb.Cty. 1979), Judge Thomas, following a bench trial, carefully considered a claim against a travel agency that had sold the plaintiff a Great Lakes cruise on a ship that was, at the time the cruise was sold, in fact impounded for failing a safety inspection. The ship never cruised the Lakes at all during the season in question, and the cruise operator subsequently went bankrupt. As it turned out, the travel agent had chosen the cruise out of a reference book and had made no inquiry as to the "responsibility, financial or otherwise, of the ship or cruise line." *Slade* 10 Pa.D. & C.3d at 629.

Judge Thomas (unsurprisingly) noted that the question of travel agent liability presented "appears to be one of first impression," *Slade* 10 Pa.D. & C.3d at 627, and after a thoughtful discussion found that the travel agent would be liable to the plaintiffs for the cost of the vacation under a number of different theories. First, the

court found that if the relationship between the client and the travel agent were viewed as contractual,[9] the travel agent would be since the plaintiff had requested that the agent secure reservations, and this gave the agent the obligation to secure such reservations on a vessel that was actually able to provide the accommodations, *see Slade*, 10 Pa.D. & C.3d at 634. Second, Judge Thomas also found that the travel agency would be liable if it were considered "as an agent or as an independent 'contractor' acting as agent," *Slade*, 10 Pa.D. & C.3d at 635. The court reasoned that if the travel agency were considered agent for the plaintiff, then it owed the duty to the plaintiff to use reasonable skill and effort to ascertain crucial facts, and if the travel agency were instead considered agent for the cruise line, then the travel agency had not sufficiently disclosed the existence of that principal, *see Slade*, 10 Pa.D. & C.3d at 635–36. Finally, Judge Thomas held that, "if we treat the action as being in trespass ... we would hold [the travel agency] grossly negligent in failing to make at least some inquiry concerning the availability of the cruise ship and financial status of the owners and operators of the cruise." *Slade*, 10 Pa.D. & C.3d at 636.

In *Tuohey v. Trans Nat'l Travel Inc.*, 47 Pa.D. & C.3d 250 (C.P.Phila.Cty.1983), Judge Forer, following a bench trial, considered a claim against a travel agency alleging that while on a tour arranged through the agency, the plaintiff had received substandard accommodations—the hotel into which she had been booked was in fact still under construction. Citing *Slade*, Judge Forer found that the travel

---

9. The court adopted the "contractual" approach from Paul C. Wohlmuth, *The Liability of Travel Agents: A Study in the Selection of Appropriate Legal Principles*, 40 Temple L.Q. 29 (1966). This article, which is cited in some other cases involving travel agent liability, *see, e.g., Abercrombie & Kent Int'l, Inc. v. Carlson Mkting Group, Inc.*, No. 88–7889, 1989 WL 46222 at *2 (E.D.Pa. Apr.25, 1989), is the only scholarly work of which we are aware that addresses the problematic issue of

the nature of travel agent liability. On the other hand, several practitioner-oriented pieces on travel agent liability have been published, *see* Thomas A. Dickerson, *What Tort Lawyers Should Know About Travel Law*, 790 PLI/Comm. 799 (1999), Thomas A. Dickerson, *Travel Consumer Litigation*, 425 PLI/Comm. 31 (1987), and Rodney E. Gould, *The Defense of Travel Litigation*, 425 PLI/Comm. 61 (1987).

agent was negligent in having failed to investigate the accommodations, and noted that because travel agents have more experience than laypersons in making travel arrangements, travel agents are required to exercise special care and expertise, *see Tuohey*, 47 Pa.D. & C.3d at 257–58.

These cases show that under Pennsylvania law travel agents have some duty of investigation for the services they provide to their clients. Federal courts considering travel agent liability under Pennsylvania law have found similarly. In *Loretti v. Holiday Inns, Inc.*, No. 85–709, 1986 WL 5339 (E.D.Pa. May 6, 1986), Judge Hannum considered claims against, among others, a travel agency alleging that it was liable for injuries the plaintiff suffered when, while on a Bahamas tour the defendants arranged, she was assaulted while walking on a beach near her hotel. Judge Hannum denied the travel agent's motion for summary judgment, finding that, under Pennsylvania law, "[a] travel agent is more than a mere ticket agent," and that "a travel agent has a duty to disclose reasonably obtainable material information to its client unless that information is so obvious to the client that, as a matter of law, the travel agent would not be negligent for failing to disclose it." *Loretti*, 1986 WL 5339 at *3.

More recently, in *McCartney v. Windsor, Inc.*, No. 95–6592, 1996 WL 65471 (E.D.Pa. Feb.14, 1996), Judge Waldman addressed claims against, among others, a travel agency alleging liability for plaintiff's injuries arising from a bus accident that occurred on a tour of England arranged through the defendants. *McCartney* presented a similar procedural situation as here, with claims of fraudulent joinder of the Pennsylvania travel agency asserted to contest a motion to remand. Judge Waldman found that, contrary to the defendants' claims, and citing *Slade, Tuohey*, and *Loretti*, it was "not so well settled" that a travel agent could not be held liable for an accident of a bus it did not own or control or could not be held liable for negligent selection of a tour, *see McCartney*, 1996 WL 65471 at *2.[10]

Taken as a whole, then, these cases go to demonstrate that travel agents like Emily M *do* have duties to their clients for conducting reasonable investigations of the travel providers they book clients on and for selecting appropriate travel providers for their clients.

Here, as detailed above, Lyall claims that Emily M was negligent in selecting an unsafe airline for Lyall and for failing to inform Lyall of the hazards of the chosen airline. AirTran responds that these claims nevertheless are not colorable, and we discuss each of its arguments in turn.

---

**10.** We recognize that federal courts in Pennsylvania have not been completely uniform in this area. In *Tucker v. Whitaker Travel, Ltd.*, 620 F.Supp. 578 (E.D.Pa.1985), Chief Judge Luongo held that a travel agency was not liable for injuries the plaintiff received in an accident while horseback riding on a tour organized by the defendants. In so holding, however, Judge Luongo did not cite the state court decisions discussed in the text and instead relied on general Pennsylvania liability principles and on *Lavine v. General Mills, Inc.*, 519 F.Supp. 332 (N.D.Ga.1981), a case decided under Georgia law, *see Tucker*, 620 F.Supp. at 586. We thus find that *Tucker* does not inform our analysis of Pennsylvania law.

Also, in *McDermott v. Travellers Air Servs., Inc.*, 462 F.Supp. 1335 (M.D.Pa.1978), Judge Muir found that the defendant tour operator was not responsible for the plaintiff's injuries received in a hotel bathroom fall, partly because there had been no showing of negligence, *see McDermott*, 462 F.Supp. at 1340. However, this decision was reached after a special jury had rendered a verdict and after the court had engaged in fact-finding, *see McDermott*, 462 F.Supp. at 1337. As noted above during our discussion of the legal standards governing the examination of fraudulent joinder, and as will be discussed further before, our inquiry here does not extend to fact finding, and instead we must determine if Lyall has raised a colorable claim. That *McDermott* concluded, after taking evidence, that there had been no showing of negligence does not mean that a colorable claim can never be raised against a similarly positioned defendant in a similar situation.

AirTran first contends that to the extent that Pennsylvania cases establish duties of a travel agent, the allegations here fall well short of the requirements for the imposition of liability. For example, AirTran argues, citing *Abercrombie & Kent Int'l, Inc. v. Carlson Mkting Group, Inc.*, No. 88–7889, 1989 WL 46222 (E.D.Pa. Apr.25, 1989), that a travel agent can be held liable only if the travel agent holds itself out has having "special expertise" for the particular type of travel, and that there is no showing here that Emily M had special expertise or that Lyall had patronized Emily M on the basis of such expertise. In reviewing the Pennsylvania cases discussed above, we cannot find that their holdings are necessarily or by their own terms limited to the precise factual circumstances or showings made in those cases. Thus, considering the *Abercrombie & Kent* case, we cannot find that Pennsylvania law[11] requires that the plaintiff plead a travel agent's "special expertise" in making a claim of negligence.[12]

AirTran also seeks to distinguish the *McCartney* and *Loretti* cases discussed above.[13] AirTran notes that in *McCartney* the plaintiffs had a longstanding relationship with the travel agent, whom they trusted to both book and select the tour, and that in *McCartney* the travel agent was alleged to have made false representations to the plaintiffs, to have explicitly taken responsibility for booking the coach that crashed, and to have known about the mechanical defects in the bus. Since these sorts of allegations are absent from this case, AirTran argues that *McCartney* ought not guide us here.

We first note that the Complaint does allege that Emily M was aware that AirTran was an unsafe airline prior to booking Lyall's tickets on AirTran, so the alleged facts here are not as distinct from *McCartney* as AirTran maintains. More importantly, the precise facts in *McCartney* are irrelevant to our consideration of it. The question *McCartney* faced is the same as we face here: whether there is a *colorable* claim against the travel agent. In finding that there such a claim was pleaded in *McCartney*, Judge Waldman relied not upon the specifics of the alleged facts[14], but instead on the apparent reality that Pennsylvania recognizes a cause of action against travel agents for negligent selection, that liability is not necessarily absent because the travel agent was not in ownership or control of the particular carrier involved in the injury, and thus the plaintiff's claims "cannot fairly be characterized as frivolous or lacking any colorable basis," *see McCartney*, 1996 WL 65471 at *2–*3. The factual differences between this case and *McCartney* therefore do not compel a different result here.

Similarly, AirTran seeks to distinguish *Loretti*, noting that in that case the plaintiff, who was assaulted while on vacation, had specifically expressed to the travel agent her concerns about the safety of a

---

11. We also note that *Abercrombie & Kent* may not state the law of Pennsylvania, as it cited as part of the basis for its holding *Bucholtz v. Sirotkin*, 74 Misc.2d 180, 343 N.Y.S.2d 438 (Dist. Ct. Nassau Cty.1973).

12. In a similar vein, AirTran cites *Tucker* for the proposition that a travel agent cannot be held liable if it did not control or operate the instrumentality on which the plaintiff was injured. However, as discussed in note 10 above, *Tucker* does not set forth the law of Pennsylvania.

13. AirTran also claims that *Slade* and *Tuohey* cases are distinguishable, but makes that claim in a footnote with no supporting analy-

sis. Evidently, AirTran's position is that because these cases concerned instances where the travel agent's failures—booking a cruise on a derelict ship or reserving rooms in an uncompleted hotel—were more demonstrably egregious than Emily M's behavior alleged here, the holdings in these cases cannot be imported to the instant case. As discussed in the text, we do not agree.

14. Contrary to AirTran's assertion, *see* Mem. of Law in Opp'n to Mot. to Remand at 11, *McCartney* made no findings regarding the facts, but instead merely recapitulated the allegations of the Complaint, *see McCartney*, 1996 WL 65471 at *1.

Caribbean vacation, and that it was this fact that led to the imposition of liability. Conversely, AirTran argues, no such statement regarding safety was made by Lyall to Emily M.[15] It is true that *Loretti* based its determination that the travel agent had a duty to disclose any information it possessed regarding safety in the area where the plaintiff would be staying upon the fact that the plaintiff had asked about safety issues, *see Loretti,* 1986 WL 5339 at *3. Notwithstanding this specific finding, *Loretti* held clearly and without specific reservation that a travel agent has a duty of disclosure; thus, to the extent that we rely upon *Loretti* for this principle,[16] it is of little consequence that the facts of that case are not identical to those here.[17]

Next, AirTran directs our attention to five cases where other district courts, faced with similar questions of fraudulent joinder in a travel litigation context, have found fraudulent joinder and denied a motion to remand. We do not find these cases persuasive. First, and most significantly, none of these cases was decided under Pennsylvania law. This is a critical difference because the whole point of this exercise is to determine if Lyall has stated a colorable claim under *Pennsylvania* law.

The fact that courts in other jurisdictions have found that no colorable claim has been raised under their applicable state laws cannot affect our analysis here,[18] particularly where Pennsylvania court decisions make clear that the travel agent does have certain duties to its customers.[19] Second, the facts presented in some of those cases are so distinct from ours as to reduce their relevance, *see, e.g., Montanez v. Solstar Corp.,* 46 F.Supp.2d 101 (D.P.R. 1999) (plaintiff made no allegation that the travel agency should have known of the risk); *McLester v. Gran Columbiana Line,* 902 F.Supp. 104 (E.D.La.1995) (party allegedly joined was a minister in charge of a tour group of schoolchildren, not a professional travel agent).

Next, AirTran cites to eleven cases that, it says, support the proposition that there is a general rule that travel agents cannot be held liable for injuries occurring on a tour. We do not find these cases persuasive. Again, our first objection is that, with one exception,[20] none of these cases was decided under Pennsylvania law. For the reasons discussed above, this largely renders these cases inapposite to our question here.[21] A second concern, however, is that all of these cases were decided at the

---

**15.** AirTran avers that Lyall sought the lowest-priced ticket from Emily M.

**16.** And we note explicitly that our finding here is primarily driven by the two Pennsylvania court decisions in *Slade* and *Tuohey* that are discussed at length above, and not on the Pennsylvania federal court decisions.

**17.** More to the point, just because *Loretti* found that the duty to disclose destination safety information depended on the plaintiff's having expressed certain concerns, this does not necessarily imply that a travel agent with knowledge of an unsafe airline would not have to disclose that information unless the client specifically expressed a concern that she should survive the flight without injury.

**18.** Naturally, if we considered the allegations presented here on a motion to dismiss or a motion for summary judgment, we would be forced to interpret Pennsylvania law and in so doing, especially given the paucity of Pennsylvania appellate precedent, we would likely

have recourse to the law of other jurisdictions. In the current posture, however, we are not called on to make such an interpretation, and, moreover, in our current inquiry we are required to resolve uncertainties in Pennsylvania law in Lyall's favor.

**19.** That is, the analysis might not be the same in a situation where Pennsylvania law was completely silent on the issue at hand. Here, Pennsylvania Common Pleas courts have defined a duty, and the parties contest the exact boundaries of that duty.

**20.** The exception is *McDermott,* 462 F.Supp. at 1335, which we discuss above.

**21.** To the extent that AirTran is correct in asserting the existence of a general rule of "no liability" for travel agents that is recognized in other jurisdictions, this is something Pennsylvania state courts will consider in refining the principles expressed in, *inter alia, Slade* and *Tuohey.*

summary judgment stage. To understand the difficulty this presents, we must return to the question of "piercing the pleadings" discussed in the margin above.

To review, in *Boyer v. Snap–On Tools Corp.* our Court of Appeals, while stating that the depth of analysis for fraudulent joinder falls short of that performed on summary judgment, did endorse *Smoot v. Chicago, Rock Island & Pacific R.R. Co.*, a Tenth Circuit case. As discussed in the margin above, the piercing *Smoot* exemplified is quite limited. In *Smoot*, the panel took note of an uncontradicted affidavit showing that the allegedly fraudulently joined party was in fact completely removed from the event giving rise to the suit. Here, we would be faced with an analogous situation if we had uncontradicted affidavit stating, for example, that Lyall had not in fact bought her ticket from Emily M but instead from some other travel agent. But that is not our case. Instead, the facts presented in the materials the defendants submitted go to the issues of, *inter alia*, Emily M's level of knowledge about AirTran and the exact nature of the communications between Lyall and Emily M, and these materials in fact confirm that Lyall *did* purchase her ticket from Emily M. Thus, the materials beyond the pleadings would not, even were we to consider them, take us so far as to establish unequivocally that Emily M is not liable. We therefore decline to pierce the pleadings so far as to consider these additional materials.[22]

As can readily be seen from this discussion, our field of factual inquiry is decidedly limited here. For this reason, the many summary judgment cases to which Air-Tran refers us are inapposite because they were made after an examination of a developed record, something we cannot do. Instead, our task is limited to assessing merely whether the claims, as alleged, are "insubstantial and frivolous". Airtran's proffered precedent is thus beside the point of our inquiry.

As stated at the outset, our analysis here is complicated by the fact that there is little Pennsylvania case law to guide our assessment of whether Lyall's claims against Emily M are colorable. Such case law as exists, however, shows that a travel agent does owe duties of investigation, careful selection, and disclosure to its clients. Here, Lyall has alleged that Emily M was negligent, *inter alia*, in its selection of a carrier and in failing to inform Lyall of certain facts.

We recognize that the case presented here, where the travel agent merely booked airline tickets for the client, may appear at first blush to be one that creates fewer duties for the travel agent than those situations presented in the Pennsylvania cases examined, where the travel agent booked entire tours for the client.[23] Nonetheless, we must construe all doubts in favor of remand, and must construe all uncertainties in Pennsylvania law in Lyall's favor. Thus, on the basis of the duties established in these earlier Pennsylvania cases, and the absence of any Pennsylvania cases establishing limits to such liability whereby the presently-pleaded facts cannot state a claim, we cannot say that Lyall's claims are not "colorable" or

---

**22.** Moreover, doing so would be tantamount to making a summary judgment ruling on the assumption that this case is properly before us in the first place, a practice that is no longer permissible, *cf. Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir.2000) (noting, in the context of analyzing standing, that "the Supreme Court has recently cautioned against the practice of assuming jurisdiction and reaching the merits of a dispute merely because a court concludes that the suit can be dismissed on the merits assuming *arguendo* that jurisdiction exists")

(citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

**23.** On the other hand, the identity of the plaintiff here—a foreign citizen and likely someone who did not have any independent knowledge of American domestic air carriers—may itself create different analytic concerns than those present in the prior Pennsylvania cases.

are "wholly insubstantial or frivolous".[24] We hasten to repeat that it is possible that these claims will ultimately be dismissed on remand, or that the defendants will prevail on summary judgment, but the important point here is that this is not our decision to make, but instead must be left to the state courts.[25]

### 2. Breach of Contract

As we have found that Lyall raises colorable negligence claims against Emily M, we will remand the case to Pennsylvania state court and we therefore need not, and in the interests of brevity will not, address the further question of whether Lyall also states colorable breach of contract claims against Emily M.

### C. Lyall's Claim for Costs and Fees

■ Pursuant to 28 U.S.C. § 1447(c), an order remanding the case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In her motion for remand, Lyall seeks such costs and fees associated with AirTran's removal, arguing that the removal was "improvident[ ]", Mem. of Law in Supp. of Mot. to Remand at 13. "[A] district court has broad discretion and may be flexible in determining whether to require the payment of fees under section 1447(c)," *Mints v. Educational Testing Service*, 99 F.3d 1253, 1260 (3d Cir.1996).[26]

■ While we have concluded above that this case is properly remanded to state court, we find that AirTran's arguments in support of removal are by no means without foundation. We therefore find that the award of costs and fees to Lyall is not warranted here.

**24.** AirTran and Emily M both urge upon us the concept that a travel agent simply cannot be held liable for what occurs on commercial airline flights booked through the agent, and note that Lyall has failed to cite any case in which a travel agent has been held liable for an accident on an airline in circumstances similar to that we consider here. They argue that the absence of cases on point only goes to show that the absence of liability for Emily M is beyond question. However, as we have reiterated in the text, we must resolve doubts in favor of remand and construe uncertainty in the law in favor of Lyall. Thus, Lyall's failure to cite cases specifically on point does not cure the fact that AirTran and Emily M themselves have similarly failed to provide citation to any Pennsylvania case firmly establishing their proposition. Faced with the law in such a condition, we cannot find that Lyall has failed to raise a colorable claim.

**25.** It is also worth noting that at the most fundamental level, our decision is driven by our constitutional scheme of federalism as reflected in the laws governing removal.

**26.** For example, the removal need not have been improvident or in bad faith to justify an award of fees, *see Mints*, 99 F.3d at 1260.